**Robert JONES**

v.

**N.V. NEDERLANDSCH–AMERIKAAN-SCHE STOOMVAART MAAT-SCHAPPIJ, Appellant,**

v.

**PHILADELPHIA CEILING AND STEVE-DORING COMPANY, Third-Party Defendant.**

**No. 15469.**

United States Court of Appeals Third Circuit.

Argued April 12, 1966.

Decided Oct. 13, 1966.

On Rehearing Dec. 28, 1966.
Further Rehearing Denied Feb. 16, 1967.

T. E. Byrne, Jr., Philadphia, Pa. (Krusen, Evans & Byrne, Philadelphia, Pa., on the brief), for appellant.

Victor L. Drexel, Philadelphia, Pa. (William J. O'Brien, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for Philadelphia Ceiling and Stevedoring Co.

Before McLAUGHLIN, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

A longshoreman brought suit against the owner of a vessel to recover damages for personal injuries caused by the unseaworthiness of the vessel. He was employed by the stevedore to discharge a cargo consisting of bales of peat moss. As work progressed loose peat moss flaked off or was loosened by the longshoremen's hand hooks and accumulated in the hold of the vessel. Plaintiff claimed that he sustained his injury when he stepped into an open bilge box in the hold which was concealed by an accumulation of loose peat moss.

The owner of the vessel claimed that the stevedore, which it brought in as a third-party defendant, was liable over to it for breach of the warranty of workmanlike service. It asserted that the cover of the bilge box had been removed by representatives of the stevedore and that it was they who had created the unseaworthy condition. At the conclusion of the longshoreman's case, however, the shipowner conceded its liability. The jury ultimately returned a directed verdict in favor of the longshoreman against the shipowner in the amount of $45,000, but found in favor of the third-party defendant. It is from the judgment against it as third-party plaintiff that the shipowner has taken this appeal. We shall for convenience refer to the shipowner as the plaintiff and to the stevedore as the defendant.

The verdict of the jury establishes that in its view the work conducted by the stevedore had not gone forward in an unsafe or unworkmanlike manner even though peat moss had been permitted to accumulate. It is true that such an accumulation, however slight, when sufficient to cover the surface of the hold, might obscure dangers, but none of the witnesses testified that this would constitute an unsafe or unworkmanlike practice. There are some risks which are inherent in the nature of the activity.

Plaintiff's claim is more directly focused on the assertion that its expert testified that the only safe and proper method of stevedoring was to remove the scattered peat moss by shoveling it into a net covered with burlap or canvas and then having it dumped or removed. It concedes that if there had been any evidence to controvert such an expert opinion it would have created a factual issue for the jury. The argument falls under the weight of the concession. For the opinion of an expert even if uncontradicted is not conclusive and a jury is not required to accept it. Such testimony must pass through the screen of the jury's judgment of credibility. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88

L.Ed. 967 (1944); Rhoades, Incorporated v. United Air Lines, Inc., 340 F.2d 481 (3 Cir. 1965); Wooley v. Great Atlantic & Pacific Tea Company, 281 F.2d 78 (3 Cir. 1960).

Moreover, the testimony of plaintiff's expert would not justify a finding that any accumulation of loose peat moss would have constituted an unsafe or improper stevedoring practice. Originally he was asked to assume that as the operation progressed peat moss had accumulated to perhaps 6 inches and in some places even deeper, and that at one time an accumulation had been shoveled into a pile which reached as high as the courtroom doorway. This, he said, would not be a proper or safe stevedoring practice. On cross-examination he was asked how much of an accumulation of loose peat moss would make the use of a net necessary. He answered, "a couple of inches". It is clear, therefore, that the testimony of plaintiff's expert would not condemn as unsafe practice the smallest accumulation of loose peat moss but only one where at least a couple of inches had been permitted to accumulate without being moved. Even if this were accepted by the jury as the standard of a safe and proper practice it would not inevitably follow that the defendant was shown to have breached its warranty. For replete in the testimony of every witness is the characterization of the circumstances which shows that the accumulation varied. Thus, the chief officer of the vessel testified there was about a foot of accumulated peat moss under the coaming but that it was not of a uniform depth throughout the hold. When he found the cover immediately after the accident it was below an accumulation of only 2 or 3 inches of peat moss. The evidence of a number of witnesses, including the original plaintiff, shows that the peat moss was shoveled away and the jury may well have believed that this was adequate while the work was in progress.

The case therefore is not susceptible of reduction to a mathematical equation in which it may be said that the maximum allowable accumulation was con-clusively shown and the witnesses on both sides agreed that the actual accumulation exceeded this amount. It is rather one in which the jury was not required to accept the expert's opinion and where, moreover, even if it had done so it could not be said to have disregarded all of the evidence in concluding that the standard was not violated.

The factual variations in the evidence, the testimony of the defendant's foreman that those working at the job did not consider the accumulation sufficiently great to require removal, all made the question of the adequacy of the stevedore's performance of its work a matter which was peculiarly for the jury to determine.

The judgment of the court below therefore will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

In this unnecessarily complicated case, the trial judge, on the mistaken idea that there was contradictory factual evidence regarding the stevedore's negligence respecting the accumulation of peat moss on the floor of the tank, submitted that issue to the jury. The court did accurately confine the negligence problem to the peat moss accumulation. The removal of the cover itself over the hole in the hold does not enter into the situation before us. It was the concealment of the hole by the loose peat moss which prevented the plaintiff Jones from seeing it and caused him to inadvertently step into the hole and to fall.

Jones was the sole witness who testified about the state of the tank before he fell. He said that " * * * on the floor itself there was about a foot of peat moss, * * * in some places there were more, of loose peat moss, and we—*and I didn't see the floor at all.*" Asked "*Was it possible to see the floor?*" Jones replied, "*No, sir, it wasn't.*" (Emphasis supplied). Describing the accident he said that "I was going back to get the last one (bale), when my leg disappeared in the peat moss, and as my left leg went in, my right leg went out from under

me, and I, of course, had lost my complete balance." The trial judge misunderstood the evidence of the ship's Chief Officer Mulder who inspected the tank immediately after Jones' fall. The Chief Officer said that in the center of the tank where the opening was, the depth of the peat moss, "*I would say was about a foot.*" (Emphasis supplied). By groping around he found the cover and *asked how much peat moss was on the top of it,* he answered, "Two or three inches." It was this latter figure that the judge mistakenly noted as testimony from Mulder "that there was approximately 2 to 3 inches of loose peat moss in the area of the bilge box."

An expert stevedore testified that it was not proper, safe stevedoring practice to allow loose peat moss to accumulate as had been testified to (and not denied), during discharge of such cargo. The stevedore-foreman on this particular unloading, testifying on behalf of the Philadelphia Company, stated that "We move peat moss if it gets too deep * * *." His method of removal was substantially that of the above mentioned expert.

It seems to me that soundly and fairly all of the fact evidence in this trial pointed to the glaring proximate fault of the stevedore company in the discharge of the peat moss cargo. That result cannot be impugned by the attempted brushing aside of the expert's testimony as opinion evidence. The hard fact that plaintiff was hurt through the inexcusable carelessness of the stevedore was not dependent on acceptance or rejection of the clearly right judgment of the expert. He merely rounded out the entirely, undisputed factual showing of just what had caused plaintiff's fall. His testimony was at most collateral to the dispositive proof of the stevedore's responsibility for the accident. On countless occasions negligence questions are, as they should be, referred to a jury but there are trials, of which this appeal is a prime example, where the evidence demands affirmative action from the court as a matter of law.

I would reverse the judgment of the district court.

Before STALEY, Chief Judge, and McLAUGHLIN, KALODNER, HASTIE, GANEY, SMITH, FREEDMAN and SEITZ, Circuit Judges.

### OPINION OF THE COURT

PER CURIAM:

The judges who heard the appeal on reargument being equally divided, the judgment of the district court will be affirmed.