Bernard **WEISBERG**, Plaintiff-Appellant,

v.

Paul **POWELL**, Individually and as Secretary of State of Illinois, et al., Defendants-Appellees.

No. 17824.

United States Court of Appeals Seventh Circuit.

Oct. 3, 1969.

Rehearing En Banc Denied Oct. 17, 1969.

Jack Joseph, David Goldberger, John Henry Schlegel, Robert G. Johnston, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen. of Illinois, John Galvin, Chicago, Ill., John E. Cassidy, Jr., Sp. Asst. Atty. Gen., Peoria, Ill., James G. Andros, Chicago, Ill., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

PER CURIAM.

The Illinois legislature has called a state constitutional convention, to meet December 8, 1969.[1] Two members are to be elected from each of 58 state senatorial districts. The election, to be held November 18, is to be nonpartisan. Each voter has two votes. In districts where five or more persons qualified as candidates, a primary was held September 23, with the four receiving the greatest number of votes surviving the primary.

This case concerns the order in which candidates' names were listed on the primary ballot in the 50 districts where a primary was held and will be listed on the election ballot in the eight other districts. In the districts where a primary was held, the nominees are to be listed on the election ballot in the order of the number of votes received at the primary, with the highest first. There has been no challenge to that order of listing, and we are not concerned with it.

Plaintiff Bernard Weisberg is a candidate suing (under 42 U.S.C. § 1983)

---

[1]. Public Act 76–40, approved May 7, 1969.

on behalf of himself and other candidates as a class. Defendant Paul Powell is Secretary of State of Illinois. Six other defendants, together with Mr. Powell, are the members of the State Electoral Board. The statute required that board to certify the primary ballot on or before August 12, and the election ballot on or before October 11.

The order of listing for both the primary ballot and the election ballots in districts where no primary was to be held is prescribed in sec. 5. The rule is that the "name of the person first filing his nominating petition with the Secretary of State shall be certified first on the ballot, and the names of the other candidates shall be listed in the order that their nominating petitions were filed with the Secretary of State."

The first day for filing was July 7 and the last July 11. This action was begun July 9. The substance of plaintiff's claim is that the secretary improperly arranged the order of filing so as to discriminate in favor of candidates endorsed by party organizations by giving them the best places on the ballot. Plaintiff sought an injunction against certifying the order of listing on the ballot until some fair method had been employed "to eliminate the effects of defendant's unconstitutional conduct."

On July 25, the district court, after trial, dismissed the action "for want of equity." Plaintiff appealed, and, after refusal in the district court, applied to this court for an injunction pending appeal. We found a sufficient probability of merit and on August 8 issued an injunction. We enjoined certification of the order of names for the primary unless the order be redetermined by a method specified in our order. We found that such method would remedy the discrimination which had made it impossible to determine fairly which candidates in fact were first to file.

We are informed that the State Electoral Board redetermined the order of names, using the method we specified, and certified the primary ballot. The primary has been held. The appeal is not moot, however, because there are eight districts where there was no primary and where the form of ballot has apparently not yet been certified.

The facts, in large measure, are undisputed. The statute said that July 7 (a Monday) was the "First day for candidates to file petitions in the office of the Secretary of State." The regular business hours were from 8 a. m. to 5 p. m.

The secretary's office had made special arrangements with the Springfield post office for delivery of mail on Sunday, July 6. Petitions received in that mail were treated as if presented at 8 a. m. Monday. Where petitions for several candidates in one district were received on Sunday, the Secretary of State considered them tied for first filing, and decided the order of filing according to his own preference among those several candidates.

182 petitions were received in the mail on July 6 and treated as filed at or immediately after 8 a. m. on July 7. 105 petitions were personally presented by candidates or representatives of candidates who were waiting in line when the office opened at 8 a. m. on July 7. These were received and filed in order, but after those received by mail July 6. Some of these 105 persons had been waiting since 6 p. m. Sunday.[2] 14 petitions were received by mail later on July 7 and 20 personally presented. 197 were filed by mail or in person July 8 through 11. 518 were filed in

2. A colorful, though probably irrelevant, episode was a minor scuffle which occurred shortly before 1 a. m. Employees of the secretary carried boxes from one office to another past the sleepy candidates. On the second trip, cries of "Crook, Crook" went up. A box was knocked to the floor and petitions tumbled out.

all.[3] The issue here involves the first 182. There is no claim that any others were filed out of order.

It is clear that many candidates who inquired about how to file were not told they could file by mail and that there was an advantage in filing by mail the weekend before July 7. Mr. Powell said he told people who telephoned him or called on him in person to be sure to come to Springfield and drop their petitions in the mail on Sunday. Apparently the practice of picking up mail the weekend before the filing date and giving preference to it has been followed in party primaries in the past and is known to the experienced. But we may infer that the secretary did not volunteer this information to newcomers except to candidates to whom he might wish to give preference. There is no hint of it in the statute nor the "Election Calendar" which was handed out nor in many of the letters responding to inquiries.

There is unrefuted testimony that in many districts the first and second places were given by Mr. Powell to candidates endorsed by the organization of one of the two major parties, although in more instances they were Democrats, which is Mr. Powell's affiliation. Mr. Powell testified: "I gave preference to people that I knew, where there was a tie; and I had no communication from the Regular Democratic Organization of Cook County. I did not have to have it." And: "After thirty years in the Legislature and five years in the Secretary of State's office, I think names are familiar to me, both Democrats and as Republicans, as to people that have been in state government and people active in their government."

We think there can be no real question but that Mr. Powell employed the device of the Sunday mail pickup to give top ballot position to people he preferred to have elected and that he saw to it that the people he wanted to prefer were informed that they should file by mail on Sunday.[4]

The Illinois statute prescribed that ballot positions shall be governed by the order of filing. This may well not be the wisest rule for awarding the advantages or disadvantages of position on the ballot. But it is at least a method based on competition among persons with presumably equal chances: "First to come, first served." The device followed by the secretary subverts this principle, first, by informing some and

---

3. Six petitions filed and then withdrawn are not reflected in these figures.

4. Plaintiff put into the record in support of his motion for injunction pending appeal a transcript of a news conference held by Mr. Powell the last day of the trial. Several questions and answers follow:

"Q. Why did you choose in favor of people that you know—names you recognized?

"A. Well, I sure wouldn't want to put on somebody there first that I didn't know. I might be getting a Communist or somebody that's against our form of government. * * *

"Q. You were playing it safe?

"A. I'm gonna take care of people like, that I've known and the names that I knew and people that I felt like would make good candidates, who would make good delegates to help re-write our constitution. This is no kid game—re-writing the constitution of the State of Illinois. And you need to elect delegates that's competent, know something about state government and will uphold our constitution of the United States, and, and, and start to waiving the flag a little bit. * * *

"Q. I believe in court you made a statement being a Democrat didn't hurt nobody.

"A. That's exactly right. I am a Democrat. I'm proud of the two-party system, and God help us if we ever destroy the two-party system. And in my opinion that's what we got some people trying to do. I'm proud of the Republican party and the Democrat party and that's the reason that I filed some Republicans first where they worked out. Because I knew these Republicans and I knew they'd make good delegates. I knew they knew something about the Constitution and would help re-write one that the people would ratify. * * * *"

leaving others in ignorance that mail received in Springfield on Sunday will be treated as arriving first during business hours on Monday, and second, by choosing favorites among those who get their petitions into the Sunday mail.

■ All the candidates were entitled, under the state law, to be treated alike. Where that is so, they have a federally protected right to the application and enforcement of the state law without intentional or purposeful discrimination among them.[5]

Defendants point out that plaintiff and the others in his class are seeking redress in their interest as candidates rather than as voters or persons generally subject to the laws of Illinois; that the offices sought are state and not federal; and that the constitutional convention will not adopt a constitution, but only propose one for popular ratification. They contend that because of these facts the principles developed in Baker v. Carr[6] and decisions stemming therefrom, including Moore v. Ogilvie,[7] have no application here.

We consider it unnecessary to decide whether the principles referred to give support to plaintiff's case. Defendants rely upon the holding of Snowden[8] that the right to a state office "is not one secured by the Fourteenth Amendment and affords no basis for a suit brought under the sections of the Civil Rights Acts relied upon, * * *." But what we have here is a situation the Court found was not present in Snowden, but which it clearly said would be redressible as a violation of the equal protection clause.

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This * * * may be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another * * *." [9]

"Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights." [10]

The Secretary of State may well have been sincere in his belief that persons with experience in government and with standing in one of the parties are best qualified to write a constitution, but the sincerity of his reason for tipping the scales in their favor does not undermine, but rather supports, the proposition that the discrimination was purposeful and intentional.

Defendants contend that plaintiff failed to prove that a candidate with first or second ballot position would enjoy a substantial advantage. This amounts to an argument that the device employed by the secretary was ineffective; that the discrimination was harmless. We think it was adequately established that top position on the ballot is one of a number of factors which tend to affect the outcome of an election, and which may have a substantial effect although the degree varies with the circumstances. Plaintiff's witnesses who stated opinions on this point were a graduate student in political science, a university political science professor, and an alderman of

5. Snowden v. Hughes (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497; Yick Wo v. Hopkins (1886), 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220. See Moss v. Hornig (2d Cir., 1963), 314 F.2d 89, 92–93.

6. (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

7. (1969), 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1.

8. Supra, footnote 5.

9. 321 U.S. 8, 64 S.Ct. 401.

10. 321 U.S. 11, 64 S.Ct. 402.

the City of Chicago who had observed or been involved in several elections. The Secretary of State, those candidates who went to some trouble to have their petitions in the weekend mail at Springfield, and the substantial number of candidates or representatives who spent a wakeful Sunday night in the capitol corridors have all attested by their actions that there is an advantage in being first on the ballot.[11]

Defendants challenge the appellate jurisdiction of this court. The premise is that this is a case where a three judge district court would be required by 28 U.S.C. § 2281. If this be true, it would follow, by reason of §§ 1253 and 1291 that we would have no jurisdiction to review the merits.

Plaintiff has not attacked the statutory rule that candidates will be listed upon the ballot in the order that their petitions are filed with the Secretary of State. He challenges a discriminatory device employed by the secretary to give preference in order of filing. Since he has not sought an injunction on the ground that the statute is unconstitutional, § 2281 does not require a three judge district court.[12]

It happens that another candidate, who filed by mail received on Sunday, but was put in third place, brought an action against defendant Powell in the circuit court for Sangamon county, Illinois. Her action was commenced July 9, a few hours earlier than this action in federal court. On July 22 the Honorable William H. Chamberlain, Circuit Judge, filed an opinion granting judgment for defendant. It seems to be suggested that the state court decision is a state court construction of the state statute so as to read Mr. Powell's actions into the statute, and that a challenge in federal court of Mr. Powell's actions is in fact a claim that the statute is unconstitutional.

It is true that Judge Chamberlain stated, among other things, that the legislature is aware of the long standing practice of receipt of petitions by mail on Sunday before a filing date and aware that a preferred candidate gets the preferred listing. He reasoned that the legislative intent is clear that the same process be followed for the purpose of the constitutional convention.

There are several reasons why we do not feel bound to accept the proposition that the discriminatory practice is part of the statute. (1) The practice is so unrelated to the terms of the statute that we have the greatest difficulty in treating the state court decision as an interpretation of the statute. (2) The plaintiff in the state court had filed in Sunday's mail and it does not appear that Judge Chamberlain had before him the plight of those who waited all night in the corridor in the reasonable belief that the statute meant what it said, nor that he considered the fact that the secretary systematically preferred party endorsed candidates in an election which the legislature specified must be nonpartisan. (3) We are not necessarily bound by the decision of a state trial court on a point of state law where the highest court of the state has not spoken on it.[13]

We conclude that there was an intentional and purposeful discrimination which, to a significant extent, de-

---

11. Beyond the advantages which arise fortuitously from top position on the ballot, the alderman testified that the professional precinct captain in the city of Chicago trains his voters to vote for the candidate in first position. Thus presence in first position is a signal to the voter.

12. See Phillips v. United States (1941), 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Ex parte Bransford (1940), 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249.

13. Commissioner of Internal Revenue v. Estate of Bosch (1967), 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886; Mustapha v. Liberty Mutual Ins. Co. (1st Cir., 1967), 387 F.2d 631, 632; California v. Fred S. Renauld & Co. (9th Cir., 1950), 179 F.2d 609.

prived plaintiff and the other members of his class of equal protection of the laws in this nonpartisan election. We reverse the decision of the district court.

It is, of course, impossible to determine the exact order in which the nominating petitions of the candidates would have been filed if all had been informed of the same ground rules and if ties among those who filed at the same time had been broken in some even handed manner. When we issued our injunction pending appeal August 8 we decided that it would remedy the discrimination if in each district candidates whose papers had been presented by the candidates or their representatives in person or received by mail after 8 a. m. on July 7 should stay in the same order with respect to one another, with any ties being broken by lot, but that the names of candidates whose papers were received by mail before 8 a. m. July 7 should be distributed among the others filed on July 7 by lot in a manner described in our order. The method specified in the order is still deemed an appropriate remedy.

The judgment of the district court is reversed and the cause remanded with directions to enter a declaratory judgment and injunction consistent with this opinion, requiring the defendants to certify the ballots in the districts where no primary has been held in the manner described in the order of this court entered August 8, 1969.

It is further ordered by this court that our order of August 8, 1969 is hereby amended so that the injunction shall henceforth also apply to certification of the ballot in those districts where no primary has been held; that the time allowed for petition for rehearing of our decision on appeal is shortened so that the last day will be October 9, 1969 and that the time for issuance of our mandate on appeal is shortened so that it will be issued October 10, 1969.