**Christopher P. BOHUS, Plaintiff-Appellant,**

v.

**BOARD OF ELECTION COMMISSIONERS et al., Defendants-Appellees.**

**No. 71–1183.**

United States Court of Appeals, Seventh Circuit.

Aug. 5, 1971.

Richard K. Means, Paul D. Frenz, Chicago, Ill., for plaintiff-appellant; Fred E. Schultz, Chicago, Ill., of counsel.

William R. Ming, Jr., Sophia H. Hall, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, KERNER, Circuit Judge, and GORDON, District Judge.*

KERNER, Circuit Judge.

The plaintiff, the Republican candidate for City Clerk of Chicago in the April, 1971 election, filed a complaint prior to the election date seeking injunctive and declaratory relief against the Board of Election Commissioners of the City of Chicago. His complaint alleged that the habitual placement of Democratic candidates on the top line of the ballot by the Commission was a violation of the equal protection clause of the Fourteenth Amendment. Relief was sought under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

The placement of candidates and parties on the ballot by the Commissioners is governed by Chapter 46, Ill.Rev.Stat. § 16–3 (1969), which provides: "The list of candidates of the several parties and any such list of independent candidates shall be placed in separate columns on the ballot in such order as the authorities charged with the printing of the ballots shall decide, * * * " Plaintiff does not attack the constitutionality of this statutory discretion granted to the Commissioners. Rather, he claims that by continually placing the Democrats on Line A of the ballot, the Commissioners have enforced the statute in a manner which is violative of the equal protection clause of the Fourteenth Amendment.

To establish a denial of equal protection, a plaintiff must prove the existence of an intentional or purposeful discrimination by authorities in which one class is favored over another. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L. Ed.2d 24 (1968). In the instant case, the burden was on the plaintiff to show that top placement on the ballot is an advantage in an election, that it favored the Democrats and that intentional denial of this spot worked a discrimination on him. Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969). Not "every minor difference in the application of laws to different groups" is a violation of the Equal Protection Clause. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

At the bench trial in the district court, the plaintiff produced three witnesses who testified that it was their opinion that ballot placement is a factor which affects the result of an election. The actual percentage advantage of the top line position varied for each witness. After the introduction by the plaintiff of this testimony and of election returns

---

* The Honorable Myron L. Gordon is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

823

for certain wards in Chicago, the judge denied relief and found for the defendant Board of Election Commissioners, stating that the plaintiff " * * * failed to prove [his case] with that degree of proof that is required. * * * "

The testimony of the plaintiff's witnesses included a professor of political science and sociology from the University of Chicago who expressed the opinion that " * * * the advantage of being on the top line relative to what a candidate would have received in a situation of rotation ranges from two and a half per cent to 25 per cent of the vote." His opinion was based on a study of general voting behavior, *Ballot Position and Voters Choice*, by Bain and Hecock, published in 1957. The witness admitted that he had not conducted a personal study of the voting machines used in Chicago, other than his own inspection as a voter. There is nothing in the record indicating that this witness analyzed election returns relative to candidate placement in Chicago or Cook County.

The second witness for the plaintiff was twice a candidate for the state senate from Chicago and has been active in the Republican Party. He was of the opinion that there is an advantage to placement on the top line. When asked for the basis of this opinion, he stated " * * * there is a natural tendency for a person to prefer 'A' over 'B' or white over black, whatever the particular combination might be, and being on top, being number one is a preferred position as vis-a-vis the Line 2," The judge questioned the witness on this basis for his opinion:

The Court: You say it is. Tell me why.

The Witness: Well, I am just saying that this is my opinion.

The Court: Yes, but you must have a reason for your opinion or I will pay no attention to it.

The Witness: Well—

The Court: Anybody can get up here and have an opinion, but if there is no

basis for the opinion, it receives no consideration.

The witness also stated that it is easier for people "in the lower socio-economic group," who are fearful of the voting machine to "Find Line 'A' than it is to skip over line 'A' and go to Line 'B'." He also stated that the Democrats have distributed campaign circulars advising voters to vote Line A, but admitted that Republicans have similar literature with respect to Line B.

The third witness for the plaintiff, an Alderman from Chicago, testified that he has been familiar with balloting and election procedures in Chicago since 1955. He believed that top ballot placement is worth 10%, although such calculation varies " * * * from precinct to precinct, depending on other conditions, * * * " He stated that the advantage arises from habit and from the fear of some voters of the voting machine.

The district judge concluded that the plaintiff failed to prove by a preponderance of the evidence that placement on Line A of the ballot was advantageous. We do not believe that this finding is clearly erroneous, Rule 52(a). Federal Rules of Civil Procedure, ar onsequently, we affirm.

The admission of opinion testimony from experts is left to the sound discretion of the trial judge. Rules 7–02, 7–03, Preliminary Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (March 1969). The judge below decided to admit the opinions of plaintiff's expert witnesses, which was within his authority, but consequently concluded that their *opinions were not of sufficient weight* to prove the advantage of Line A placement. The opinions of experts, even if uncontradicted, may be disregarded by the trier of fact, if the fact sought to be proved by the testimony has not in other respects been conclusively shown. Jones v. N. V. Nederlandsch-Amerikaansche Stoomvaart M.,

374 F.2d 189, 190 (3d Cir. 1966), cert. denied Holland American Line v. Philadelphia Ceiling & Stevedoring Co., 388 U.S. 911, 87 S.Ct. 2114, 18 L.Ed.2d 1349; Griffin v. Missouri Pacific Railroad Co., 413 F.2d 9, 13 (5th Cir. 1969); Manning v. New York Telephone Co., 388 F.2d 910 (2d Cir. 1968); Nuzzo v. Rederi, A/S Wallenco, Stockholm, Sweden, 304 F.2d 506 (2d Cir. 1962); Mound Company v. Texas Company, 298 F.2d 905 (5th Cir. 1962), cert. denied 371 U.S. 817, 83 S.Ct. 29, 9 L.Ed.2d 57. The record in the instant case supports the judge's rejection of the opinion evidence offered by the plaintiff.

We understand that exactitude in proof of voting behavior may be an impossible goal in trials such as this. As the experts below explained, it is difficult to isolate one factor among many which affects the outcome of an election. Nevertheless, we do not think it was error for the district judge to determine that the opinion evidence was fatally defective. The judge believed that the witnesses produced no cogent basis justifying their opinions that top placement was advantageous. As stated by Ladd in Expert Testimony, 5 Vand.L.Rev. 414, 421 (1952): "Generally, as expert testimony approaches the speculative, the possibility of its admissibility and its weight if admitted is lessened; * * * *" See Whitcomb v. Chavis, 403 U.S. 124, 145, 91 S.Ct. 1858, 1870, 29 L.Ed.2d 363 (1971).

■■ We do not doubt that plaintiff's witnesses qualified as experts on electoral politics and balloting in Cook County. But the foundation testimony which established their expertise as political experts cannot, without more, support their opinion on the advantages of placement on Line A. It was within the province of the district judge as trier of fact to conclude that this expertise did not form an adequate basis for the opinion testimony given. During the cross-examination of these witnesses, the judge made it clear that, notwithstanding their expertise, they had not adequately explained the basis for their opinion.[1] The lack of a sufficiently factual basis for the opinions of the experts permitted the judge to disregard their testimony and find for the defendant.

The plaintiff urges that Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969), dictates a reversal in this case. While we have found *Weisberg* helpful to us in our deliberation and insightful in its analysis and application of the law to the electoral process, we do not believe that its finding concerning the advantages of top ballot placement changes the result in this case.

In *Weisberg,* an election for delegates to the constitutional convention, all of the candidates were listed on the ballot without any party designation. The two candidates who received the highest total number of votes were elected. In each of the delegate districts, the number of candidates exceeded the number to be elected. The Illinois statutes (Ch. 46, Ill.Rev.Stat. § 8–9 (1969)) require that in multi-candidate elections the person whose petition is first received at the office of the Secretary of State is to receive the first position on the ballot in that delegate district. Since, in most districts, the number of candidates exceeded the number to be elected, and the candidates were not listed under any political party designation, nor were they necessarily known to the community, first position in the listing of candidates would be advantageous, as found by the court in *Weisberg.*[2]

---

1. We do not intimate that a detailed and costly statistical survey of the voting behavior in Cook County would be required. Yet it would be helpful if a study were conducted in which a sample of voters in this jurisdiction indicated whether placement affects or has affected their voting behavior. A study of the voters in some districts where neither party otherwise has an advantage (the "swing" districts) would be more probative than in those where the outcome of an election would be reasonably predictable.

2. The finding in *Weisberg* concerning the advantage of top ballot placement was based also on the fact that the candi-

In the matter before us, however, only one candidate is listed for each office, and a political party designation further identifies the candidates of that party. Further, each of the parties has distributed campaign literature identifying its position on the official ballot.[3]

Thus, the factual background of *Weisberg* depicts an election with a different form of ballot and different political forces at work. We do not believe that the findings in that case can excuse the plaintiff here from offering a probative factual basis for the expert opinion testimony elicited. Given the record before the district judge in this case, it was not clearly erroneous for him to have rejected the plaintiff's proof on ballot positioning.

Accordingly, we affirm the judgment of the district court.

Affirmed.

MYRON L. GORDON, District Judge (dissenting).

In my opinion, the board's consistent practice of placing the Democratic Party in first position on the ballot and putting the Republican Party in second position is patently discriminatory and illegal.

The plaintiff's evidence showing the discriminatory nature of this practice was, in my view, clearly sufficient to establish a prima facie case; the plaintiff's proof was not substantially controverted. Indeed, both logic and common experience dictate a finding that "first is best" on a political ballot; it is so obvious that first position on an election ballot is preferential that the district court could have reached no other conclusion upon the evidence offered in this case. The fact that the Chicago board of election commissioners *invariably* put the Democratic Party first on the ballot is, in itself, strongly suggestive of the inherent advantage of being listed first.

I am unable to distinguish Weisberg v. Powell, 417 F.2d 388, 392 (7th Cir. 1969). There, as here, "it was adequately established that top position on the ballot is one of a number of factors which tend to affect the outcome of an election * * *." Political parties, no less than individuals, are entitled to be treated alike. To put one party automatically first on the ballot cannot qualify as a permissible classification.

In Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), it was determined that the discriminatory application of a state statute which was fair on its face constituted a deprivation of equal protection under the 14th Amendment. Said the Supreme Court at page 11, 64 S.Ct. at page 402:

"Where discrimination is sufficiently shown, the right to relief under the

dates, in their attempts to achieve top placement, " * * * all attested by their actions that there is an advantage in being first on the ballot." 417 F.2d at 393. No such evidence was introduced in this case.

3. The difference between the nature of the ballot in this case and *Weisberg* can be illustrated:

*Constitutional Convention Ballot*

[*Choose two (2)*]

.........................................
.........................................
.........................................
.........................................
.........................................
.........................................
.........................................

*April 1971 City of Chicago Elections Ballot*

[*Choose one (1)*]

A. DEMOCRAT ...........................................
B. REPUBLICAN ...........................................

equal protection clause is not diminished by the fact that the discrimination relates to political rights."

There is also applicable here the expression of the Supreme Court in Moore v. Ogilvie, 394 U.S. 814, 818, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), where the court said:

"All procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgement of the right to vote."

An ostensibly impartial election board may not favor one party over another in ballot position. There are many feasible alternatives which would eliminate discrimination; for example, ballot positions could be determined by lot or by rotation.

In my opinion, the practice regularly followed by the defendants contains "a built-in bias tending to favor particular political interests". Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (decided June 7, 1971).

Therefore, I respectfully dissent.