Stephen J. CULLITON, Plaintiff,

v.

The BOARD OF ELECTION COMMISSIONERS OF the COUNTY OF DuPAGE et al., Defendants.

No. 76 C 3267.

United States District Court,
N. D. Illinois, E. D.

Sept. 20, 1976.

Marco & Mannina, Downers Grove, Ill., for plaintiff.

Thomas C. Kelleghan, Wheaton, Ill., and Joseph S. Wright and Clifton A. Lake, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for defendants.

1. The plaintiff seeks to bring this as a class action in behalf of all non-Republican party candidates for office in the forthcoming November election. This is by the terms of the suit limited to candidates in DuPage County.

2. The board is given statutory discretion to draw up the ballot. It is composed of the County Clerk, and two other individuals (one from each major party). The County Clerk is the chairman. Thus the party controlling the position of the County Clerk controls the elec-

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Stephen J. Culliton, the Democratic candidate for State's Attorney of DuPage County, has brought this suit under 42 U.S.C. § 1983 against the Board of Election Commissioners of DuPage County.[1] In essence the suit challenges the constitutionality of the practice whereby the Board has consistently placed the candidates of the Republican party, as well as the party itself, on the first line of the ballot.[2] The plaintiff asserts that this is arbitrary, capricious and discriminatory conduct which deprives non-Republican candidates and other parties of equal protection of their constitutional rights.

The plaintiff seeks a declaratory judgment with respect to the constitutionality of the challenged practice and injunctive relief compelling the defendants to employ a "fair method" of ballot placement.

A hearing was held in this cause on September 16, 1976, and the court heard testimony from witnesses called by the parties.

■ In order to sustain his case the plaintiff must prove that "top placement on the ballot is an advantage in an election, that it favored the [candidates in the top ballot position] and that intentional denial of this spot worked a discrimination on him." *Bohus v. Board of Election Commissioners*, 447 F.2d 821, 822 (7th Cir. 1971); *Weisberg v. Powell*, 417 F.2d 388 (7th Cir. 1969).

The cases dealing with this question in the Seventh Circuit indicate that a candidate who is arbitrarily denied fair access to the top ballot position is entitled to equita-

tion board. While the defendants initially characterized their practice as doing no more than awarding top ballot position to whatever party is the majority party in the county, the evidence indicates that in fact that position is awarded to the party of the County Clerk. In the three Illinois counties where the voters are predominantly Republican, but the county clerk is a Democrat, the Democrats have been awarded the top ballot position.

ble relief if he can present satisfactory evidence that the ballot position would be significant in the election. Judge Austin ruled in *Bohus, supra,* that a sufficient evidentiary showing had not been made by the plaintiff, and a divided panel upheld his decision as not clearly erroneous. In *Weisberg, supra,* the evidence presented by the plaintiff was more convincing and the court ruled that "it was adequately established that top position on the ballot is one of a number of factors which tend to affect the outcome of an election, and which may have a substantial effect although the degree varies with the circumstances." 417 F.2d at 392. The court therefore held that "there was an intentional and purposeful discrimination which, to a significant extent, deprived plaintiff and the other members of his class of equal protection of the laws in this nonpartisan election." 417 F.2d at 393–94. *See also, Mann v. Powell,* 333 F.Supp. 1261 (N.D.Ill.1969); *Netsch v. Lewis,* 344 F.Supp. 1280 (N.D.Ill.1972).

■ There was only one expert witness who testified in this case with respect to the advantage of top ballot position. Dr. Samuel Kirkpatrick, a professor of political science with training in statistics, testified for the plaintiff. The defendants cross-examined Dr. Kirkpatrick but did not offer witnesses of their own.

Dr. Kirkpatrick testified in detail with respect to the research literature on the effect of ballot position in varied election situations. He maintained that all the reputable studies have indicated that there is a "first position effect" which favors candidates on the top of the ballot. Dr. Kirkpatrick also testified to various other factors that might tend to mitigate the impact of ballot placement.

After hearing the testimony of Dr. Kirkpatrick on both direct and cross-examination, the court concludes that there is convincing evidence that top placement on the ballot would be an advantage to the plaintiff, and that this position cannot be arbitrarily and capriciously allocated on partisan grounds.

The evidence makes it clear that the first position may normally generate an approximate additional 5% vote total for the favored candidate. The bonus may be affected by other factors such as the name recognition of the candidates, the publicity given to the various races, party loyalty in general elections, the numbers of candidates and contested offices on the ballot, and the educational status of the voters. Dr. Kirkpatrick testified, and common sense corroborates, that the "first position effect" is stronger in the "less visible races" further down on the ballot.[3] He further testified that it was stronger in two-candidate races, and probably had less impact in general elections than in primaries and nonpartisan contests.

Indeed the defendants themselves have conceded that the top position is valuable in primary elections. While the court can conclude that the inclusion of the party label for candidates in a general election may often counteract the "first position effect" with respect to voters with a strong sense of party identification, it seems logical that ballot position would be as critical in a general election as in a primary with respect to the numerous voters with less party loyalty.[4] Dr. Kirkpatrick indicated that party labels may reduce the impact of ballot position by 2%. Of course, candidates on the bottom of the ballot may still prevail where they have significant popularity. Nonetheless, elections have been frequently decided by far less than a 6% margin,[5] and

3. Nonetheless even in the well publicized Democratic presidential primary, candidate Jimmy Carter's performance in DuPage County was seemingly improved by 4.9% in those districts where he had the benefit of top place on the ballot.

4. Most recent surveys indicate that voters without party affiliation are a substantial por-

tion of the electorate, usually more numerous than those adhering to either major party.

5. Assuming an average 5% "top position effect" reduced 2% by the presence of party labels, the favored candidate obtains a 3% vote cluster by virtue of ballot position. The shift of 3% of the vote creates a 6% spread which the candidate's opponent must overcome.

it would be a denial of equal protection to arbitrarily give one candidate such a head start towards victory.

■ There is no real dispute that the plaintiff has been intentionally denied equal access to the top ballot position. Defendant McDonald, the Republican County Clerk for DuPage County, and the chairman of the defendant Board, admitted that it was the practice of the Republican majority on the Board to award top position to their own party. Indeed in Republican leaning DuPage County, that party has enjoyed the favored position continuously since the days of Abraham Lincoln.[6] Further testimony indicated that it is the general practice throughout the state for county clerks to favor their own party with the top position.

Consequently, the court holds that the plaintiff has satisfied the requirements articulated in *Bohus* to sustain a complaint for denial of equal protection.

■ The more difficult question facing the court is the fashioning of equitable relief. The evidence reveals the award of top position on the ballot amounts to the allocation of an indefinite amount of votes. The fairest procedure seems to be some form of ballot rotation whereby the cluster of "first position effect" votes is equitably shared by the candidates. There are apparently numerous means of performing this rotation, with the more complex schemes providing for a greater guarantee of randomness, and thus fairness to the candidates.[7] Ballots can be rotated by precinct, by machine, by district. Many states require rotation by law, and in Illinois the ballot positions are rotated in the primaries for state and national office, as are the Chicago aldermanic ballots. Given adequate time to prepare for ballot rotation, it is evident that this is feasible and the fairest practice.

However, the court is confronted with the fact that the general election is one and

a half months away, and that the absentee ballots must be available by October 4th. Similarly, the election officials must promptly make available specimen ballots. Witnesses called by the defendants indicate that the effort to devise a scheme for random ballot position and to print such ballots in time for the needs of the upcoming election would entail serious, if not unsurmountable, difficulties.

But even if the "first position effect" vote cluster cannot be evenly allocated in this election, it is certain that these votes can at least be assigned in a nondiscriminatory manner.

Thus the court will order that the defendants immediately implement for the November 2, 1976, election *at a minimum* the following procedure: Throughout DuPage County the order on the ballot of the candidates for each office (national, state, and local), and the order of the competing parties seeking straight ticket votes shall be determined by an impartial and unweighted drawing which shall be conducted in public.

The defendants are further ordered to devise a system of rotational ballot placing for future general elections which will equitably equalize the "first position" vote cluster among the parties and candidates. They are, of course, entitled to implement such a procedure, upon the court's approval, in the upcoming election if they find it feasible to do so.

Since the court finds that the plaintiff has proven the allegations of his complaint, the court hereby declares that the conduct of the defendants in allocating ballot positioning unconstitutionally deprived the plaintiff and the class he represents of equal protection under the laws, and hereby orders the injunctive relief detailed in this opinion. The court will retain jurisdiction in the instant case.

---

6. McDonald says that Republicans have been atop the ballot since 1860; the first national Republican ticket was fielded in 1856.

7. The more complicated proposals include a scrambling of the *order* of the candidates, so

that a candidate's *neighbors* on the ballot will be as random as his *position*. This substantially increases the permutations of ballot combinations needed for rotation.