**Sanford KRASNOFF**

v.

**Hon. Paul J. HARDY, Individually and in his capacity as Secretary of State for the State of Louisiana and the State of Louisiana.**

**Civ. A. No. 77–2501.**

United States District Court, E. D. Louisiana, Section D(G).

Aug. 19, 1977.

---

**3.** Defendant must be culpable of more than negligence. *McDonald, supra; Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976).

Steven R. Plotkin, New Orleans, La., for plaintiff.

Kendall L. Vick, Donald Ensenat, Asst. Attys. Gen., La. Dept. of Justice, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

SEAR, District Judge:

Plaintiff, Sanford Krasnoff, is a duly qualified candidate for the United States House of Representatives in the general election to be held on August 27, 1977. He alleges that, because he is an independent candidate, he has been deprived of equal protection of the law by the form of a ballot to be used in the voting machines for this election. This ballot, plaintiff alleges, affords him different and impermissibly discriminatory treatment from candidates affiliated with the two major parties. The defendant, the Secretary of State of Louisiana, is sued in his capacity as supervisor of the administration of Louisiana's election laws. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343(3).

The specific injuries which plaintiff complains of all concern the format of the ballot. The ballot is arranged in three vertical columns. The top of each column, reading left to right is labeled respectively "Democratic Party", "Republican Party", and "Nomination Paper". The names of the Democrat and Republican candidates appear horizontally adjacent to each other in their respective columns and the plaintiff's name appears in the same horizontal plane in the column labeled "Nomination Paper". Additionally, the Democrat and Republican columns each have their party symbol (a donkey and an elephant) under the party label, and each of the two major parties have a large straight-ticket or party lever at the top of their column as well as a small lever by the candidate's name itself. The large party lever can be pulled in lieu of the smaller lever next to the candidate's name in order to register a vote on the machine. Plaintiff has no straight ticket lever nor any party symbol at the head of his column.

His allegations of discrimination are that his column is unfairly placed last, or at the far right of the ballot, that he has no party lever or party symbol, and that he has not been allowed to place his chosen political designation, "Independent Democrat" at the head of his column. Plaintiff has attached to his petition copies of correspondence with the Attorney General of Louisiana requesting changes in the ballot.

This matter was originally brought before the court by plaintiff on August 11, 1977, as an application for a Temporary Restraining Order against the use of the ballot in the general election. A hearing on this application was held on August 12, 1977, at which time defendant filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. At that hearing, the court determined that plaintiff had presented insufficient allegations of irreparable harm to warrant issuance of the order under Rule 65(b). Also, the election which plaintiff sought to restrain was, at that time, beyond the ten day limit within which Rule 65 mandates that a Temporary Restraining Order expires. Accordingly, plaintiff's action was converted into one seeking a preliminary injunction and the court scheduled this hearing, held on August 17, 1977, at which time plaintiff's and defendant's motions were consolidated for a full and joint determination.

In his Memorandum in Support of Motion for Preliminary Injunction, plaintiff asks for three specific alterations on the ballot to be used in the General Election to be held on August 29, 1977:

(A) the determination of first, second and third positions on the ballot be arrived at by drawing lots for the respective positions;

(B) a large or party lever either be placed at the head of the column in which candidate Sanford Krasnoff's name appears, or alternatively, that such large or party levers be removed from all columns so that the process of voting for any candidate will be identical to that of voting for any other candidate; and

(C) designation be supplied at the head of the column in which candidate Sanford Krasnoff's name appears; petitioner would ask that the phrase "nomination papers" be preceded with either the phrase "Independent Democrat," or the word "Independent" as the court may determine, and as LSA–R.S. 18:626 requires.

In determining whether to grant or deny a preliminary injunction under Federal Rule 65, there are several crucial factors which a court must consider:

(1) the significance of the threat of irreparable harm to plaintiff if the injunction is not granted;

(2) the state of the balance between this harm and the injury that granting the injunction would inflict on defendant;

(3) the probability that plaintiff will succeed on the merits; and

(4) the public interest.

11 Wright & Miller, *Federal Practice and Procedure*, § 2948 at 430–31.

Because plaintiff has sought this relief so close to the election which would be affected by the granting of a preliminary injunction, it becomes most important to consider the likelihood of his success on the merits. Because there is so little time before the question becomes moot, this is, in effect, a decision on the merits. Nevertheless, the court should give equal weight to the threat of irreparable harm to the plaintiff, or to the defendant should the plaintiff be successful, and to the balance between these two threats. Also it is impossible to escape the consideration of the public interest in this matter, both because denial of injunctive relief might result in deprivation of a constitutional right, and because granting a preliminary injunction will result in the expenditure of a great deal of time and money on the part of the state.

Plaintiff asks the court to apply the concept of "strict scrutiny" to this matter, whereby the state would be forced to show

a "compelling" interest in maintaining the ballot in its present form, because the right of the plaintiff which it infringes is so constitutionally protected that only the most important and non-discriminatory state interests can justify such infringement. However, the cases cited by plaintiff for the application of strict scrutiny to ballot cases, *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) and *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), both deal with initial access to the ballot. These cases are not pertinent to the issue now before the court, as Mr. Krasnoff is already on the ballot.

In a case similar to this one, involving Massachusetts' practice of listing incumbents first on the ballot, the court noted that such practices do not involve restrictions on the right to vote, nor do they bar all access to the ballot because of burdensome filing fees or political affiliation. *Clough v. Guzzi*, 416 F.Supp. 1057, 1067 (D.Mass.1976). Thus, the court felt that something less than strict scrutiny was required in examining Massachusetts' justification for the form of its ballot. Here, especially since plaintiff has presented only vague allegations of unconstitutional treatment and an "undue burden on the right to vote," strict scrutiny is likewise not necessary. As the court noted in *Clough v. Guzzi*:

> Voters have no constitutional right to a wholly rational election, based solely on reasoned consideration of the issues and the candidates' positions, and free from other 'irrational' considerations . . . . We conclude that, even assuming some positional advantage here, the voters' right to choose their representatives is not sufficiently infringed as to warrant strict scrutiny . . . . *Id.* at 1067.

This court's task, then, is simply to examine the merits of plaintiff's position and determine whether Louisiana has a legitimate, rational reason for treating him differently from the major parties' candidates.

### I. Ballot Position:

■ On this issue, plaintiff first alleges that defendant, Paul Hardy, has failed to comply with LSA–R.S. 18:671, which, plaintiff argues, requires an alphabetical listing of candidates' names. First of all, this requirement is not obvious on the face of the statute and secondly, it is not for this court to enforce Louisiana's election laws. The only issue properly before the court is whether the placement of plaintiff's name to the right of both the Democrat and Republican candidates' names is improper. The weight of authority is to the effect that it is not.

In *Clough v. Guzzi, supra,* the court, after hearing much evidence on the effect of ballot position and the knowledge of incumbency, noted that the advantage conferred by incumbency and first position was not one "which is easily susceptible to measurement." There are many other factors such as voter familiarity with the candidates, the importance of the office, and ethnic affiliation, which make it difficult to isolate the effect of ballot position. Even assuming there were some advantages, the court felt that these advantages were too variable and problematic to outweigh Massachusetts' legitimate and material interests in revealing which candidates on the ballot are incumbents, and in placing those candidates first on the ballot.

■ The two cases most similar to the one *sub judice* both arose in the Seventh Circuit, one an Appeals decision and one a district court decision, and both involved the same ballot policies in Illinois. In *Bohus v. Board of Election Commissioners,* 447 F.2d 821 (7 Cir. 1971), the Court of Appeals for the Seventh Circuit held that habitual placement of Democrat candidates on the top line of the ballot was not inherently a violation of equal protection. The Court noted that: "To establish a denial of equal protection, a plaintiff must prove the existence of an intentional or purposeful discrimination by authorities in which one class is favored over another." *Id.* at 822. There the court admitted expert testimony on the advantageous effect of top placement, but felt the evidence insufficient to overturn the Illinois practice. The later district court decision dealing with this

same issue, *Culliton v. Board of Election Commissioners,* 419 F.Supp. 126 (N.D.Ill. 1976) is strongly relied on by plaintiff. There the court acknowledged the authority of the *Bohus* decision, but held that the expert testimony before it on the advantages of top placement did carry the burden of proving denial of equal protection. This is the only case on the issue of ballot placement which struck down such a practice. *See, e.g., Voltaggio v. Caputo,* 210 F.Supp. 337 (D.N.J. 1962), which rejected, *inter alia,* an attack by an independent candidate on a New Jersey law which gave first choice of position to candidates of the major political parties. Even ignoring this weight of authority, it is difficult to see any great unfairness in the Louisiana ballot which does not, as in the above cases, list candidates' names in horizontal order, but gives each candidate a vertical column from left to right. In this way each candidate's name appears on the same horizontal plane, so that it is difficult to say that any candidate is first or last.

## II. The Party Lever:

▊ Again, plaintiff makes a misplaced attempt to have this court enforce his dubious interpretation of Louisiana's election laws, which he argues require party levers above all candidates' names. See LSA–R.S. 18:671. The weight of federal jurisprudence also fails again to support plaintiff's contention that the absence of a party lever above his name is a denial of his constitutional rights. The cases on the issue are not squarely on point, but they do indicate that there is nothing inherently unfair in Louisiana's practice. For example, in *Voorhes v. Dempsey,* 231 F.Supp. 975 (D.Conn. 1964), the plaintiff attacked a mandatory party lever system whereby a voter had to specifically reject any candidate on a party slate for whom he did not wish to vote by pushing a key assigned to that candidate's name. The plaintiffs alleged that this was unduly burdensome to independent voters. The court noted that: "Under the Federal Constitution the states have been entrusted with broad discretion in formulating an election system . . .

and nothing in the complaint indicates that this discretion has been abused." *Id.* at 977 (cites omitted). The court noted that party levers simplify and speed up the election process, and therefore are justified under the states' discretionary powers. The plaintiff's citation of *Gilhool v. Philadelphia County Board of Elections,* 306 F.Supp. 1202 (E.D.Pa. 1969), is not illuminating on this issue. There a three judge court merely held that no unconstitutional effect was produced by a system whereby all candidates, including independents, had large party levers above their respective columns. The court did not rule on or imply the necessity of such levers next to the designation of political affiliation at the head of each candidate's column.

## III. Designation as "Independent Democrat":

▊ Once again the court must reject plaintiff's attempt to have us interpret Louisiana's laws so as to give him the right to choose a designation of his political principles to place above his name. *See* LSA–R.S. 18:625, 626, 671. The court can only rule on the constitutionality of the refusal to allow Mr. Krasnoff to designate himself as an "Independent Democrat." Plaintiff has been unable to cite, and I am unable to find, any authority requiring a state to allow an independent candidate to designate his political philosophy or principles. On the contrary, what authority does exist is either contrary to plaintiff's position or, at best, inconclusive on the issue. For example, in *Ihlenfeldt v. State Election Board,* 425 F.Supp. 1361 (E.D.Wis. 1977), the court held that the ballot, which permitted candidates of minor political parties to appear with their party designations under the column headed "Independent," did not deny equal protection to a candidate with no party affiliation, notwithstanding a contention that the ballot form denied that candidate equal protection because he, a "true" independent, was listed in the same column as those who belonged to unpopular political parties. In *Voltaggio v. Caputo,* supra, the plaintiff, an independent candi-

**310**

date, was refused permission to identify himself on the ballot as a "Lifelong Democrat" because of a New Jersey law prohibiting independent candidates from using principles or slogans which were part of the name of a political party. The court upheld the law, because to do otherwise would have misled the voters to assume the plaintiff *was* a Democrat. Similarly, Louisiana is justified in reserving the designation "Democrat" to those candidates who, in accord with Louisiana's primary law, have survived the Democratic party's primary election.

*Conclusion*

■ The cumulative effect of the authority against the merits of Mr. Krasnoff's position cannot be ignored in ruling on his request for a preliminary injunction. He seems very unlikely to succeed on the merits should this matter proceed any further. Additionally, the authorities cited above leave me doubtful that denying all the relief plaintiff seeks will make his election chances any better or any worse. Consequently, there seems to be little threat of irreparable harm. To the contrary, the harm to be suffered by the State should plaintiff prevail far outweighs any harm to Mr. Krasnoff. The State and ultimately its taxpayers would be put to great expense and the orderly election process would be disrupted. The U.S. Supreme Court has recognized that where an injunction would so adversely affect the public interest, the court has additional reasons to deny the order. *See Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Wright & Miller, Federal Practice and Procedure, § 2948 at 457–460.

■ The states have been given broad discretion in formulating election systems for the choosing of representatives. *United States v. Classic*, 313 U.S. 299, 311, 61 S.Ct. 1031, 85 L.Ed. 1368 (1940); *Voorhes v. Dempsey*, 231 F.Supp. 975, 977 (D.Conn. 1964), aff'd 379 U.S. 648, 85 S.Ct. 612, 13 L.Ed.2d 552. Louisiana provides two basic means of attaining a position on its ballot for U.S. representative: a candidate may enter a party primary and if successful be designated on the ballot as that party's candidate; or he may simply file nominating papers and be designated on the ballot as a candidate who has done so. These options far exceed the minimum constitutional requirements for access to the ballot. *See Jenness v. Forston*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Plaintiff had this option and chose the latter method. He cannot now be heard to complain that this choice deprived him of identical status to those who chose the other method. Accordingly, plaintiff's motion for preliminary injunction is DENIED, and defendant's motion to dismiss is GRANTED.