Manson GARREAUX, Appellant,

v.

Cecil D. ANDRUS, Individually and in his official capacity as Secretary of the Interior; Sidney Mills, Individually and in his official capacity as Assistant Secretary of the Interior for Indian Affairs; Richard Drapeaux, Individually and in his official capacity as Acting Area Director for the Bureau of Indian Affairs for the Aberdeen Area Office; T. L. Traversie, Individually and in his official capacity as Superintendent of the Cheyenne River Agency; and the United States of America, Appellees.

No. 81–1712.

United States Court of Appeals, Eighth Circuit.

Submitted April 27, 1982.

Decided May 4, 1982.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D. C., Jeffrey L. Viken, Acting U. S. Atty., Rapid City, S. D., Dawn Bowen, Asst. U. S. Atty., Pierre, S. D., Edward J. Shawaker, David C. Shilton, Attys., Dept. of Justice, Washington, D. C., for appellees.

Mario Gonzalez, Pine Ridge, S. D., for appellant.

Before FLOYD R. GIBSON, Senior Circuit Judge, ROSS, Circuit Judge, and STEPHENSON, Senior Circuit Judge.

PER CURIAM.

*Facts*

Manson Garreaux, an enrolled member of the Cheyenne River Sioux Tribe, brought this action against the Secretary of the Interior seeking to compel him to consider Garreaux's petition calling for a Secretarial election on the adoption of proposed amendments to the Cheyenne River Sioux Constitution. Indian tribes are organized pursuant to 25 U.S.C. § 476, which provides in relevant part:

> Any Indian tribe, or tribes, residing on the same reservation, shall have the right to organize for its common welfare, and may adopt an appropriate constitution and by-laws, which shall become effective when ratified by a majority vote of the adult members of the tribe, or of the adult Indians residing on such reservation, as the case may be, at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe. Such constitution and by-laws, when ratified as aforesaid and approved by the Secretary of the Interior, shall be revocable by an election open to the same voters and conducted in the same manner as hereinabove provided. Amendments to the constitution and by-laws may be ratified and approved by the Secretary in the same manner as the original constitution and by-laws.

Pursuant to the authority granted him in that section the Secretary of the Interior promulgated a regulation dealing with requests for elections which states:

> The Secretary will authorize the calling of an election on adoption of a constitution and bylaws upon request by the tribal governing body or an authorized representative committee *or* upon petition filed by at least one-third of the adult mem-

bers of the group. An election of the adoption of amendments to the constitution and bylaws shall be authorized by the Secretary when requested as provided in the amendment article of the constitution and bylaws; however, the election shall be conducted in the manner prescribed in the rules and regulations in this part. The Secretary may propose amendments to the constitution for consideration at Secretarial elections, unless the constitution and bylaws for Secretarial elections provides otherwise. Any authorization not acted upon within ninety (90) days from the date of issuance will be considered void.

25 C.F.R. § 52.5 (emphasis added).

The provision of the Cheyenne River Sioux Tribal Constitution regarding requests to call elections on amendments to the constitution or bylaws requires a petition signed by at least 200 registered voters of the tribe and a request by the tribal council.

In January 1981 Garreaux and other members of the tribe circulated a petition calling for an election to vote on proposed amendments to the tribal constitution. After obtaining the required number of signatures Garreaux then sought to gain the approval of the tribal council for the request for an election on the proposed amendment. According to Garreaux's complaint he attempted on three different occasions (February 27, March 3 and March 4, 1980) to present the request to the tribal council in order to obtain the council's approval. On each occasion not enough members were present to comprise a quorum. Garreaux contends in his complaint that tribal council members opposed to the proposed amendment boycotted the scheduled meetings to prevent the council from voting upon the proposal. Garreaux then filed the petition with the Cheyenne River Agency of the Bureau of Indian Affairs. The agency superintendent, T. L. Traversie, referred the petition to the tribal secretary for submission to the tribal council. No action has been taken by the tribal council to date and the request is still pending.

Following referral of the petition back to the tribal council Garreaux filed this complaint in United States District Court. The petition requests a declaratory judgment that the decision of Superintendent Traversie regarding the interpretation of 25 C.F.R. § 52.5 was incorrect and a writ of mandamus to compel the Secretary of the Interior to consider the request.[1] The district court found that Garreaux had not met the necessary requirements for requesting an election and dismissed the complaint for failure to state a claim for which relief could be granted.

On appeal Garreaux contends that the trial court erred in refusing to find the Secretary obligated to consider the petition absent a request by the tribal council. He argues that the first amendment guarantee of the right to petition for a redress of grievances entitles him to petition the Secretary for an election. Although Garreaux characterizes his argument as one attacking the Secretary's interpretation of the regulation, it seems more in the character of an attack on the validity of the regulation. He relies primarily on the language used by this court in *Cheyenne River Sioux Tribe v. Andrus*, 566 F.2d 1085 (8th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978). That case dealt with whether the twenty-sixth amendment lowering the voting age in federal elections to eighteen applied to elections called by the Secretary on the adoption of amendments to the tribal constitution. The court found the new age limitation applicable to Secretarial elections despite the existence of a federal statute and a tribal constitutional provision setting the voting age requirement at twenty-one. In doing so, the court stated:

1. The petition also asks that Traversie be compelled to disqualify himself under 43 C.F.R. § 20.735 32(d)(2) from the consideration of future petitions, or if that regulation is inapplicable that Traversie be compelled to promulgate conflict of interest regulations pursuant to 25 U.S.C. § 472. This issue was not addressed during argument on the motion to dismiss and Garreaux does not assert it on appeal.

[T]he Tribe would draw a distinction between the adoption of a tribal constitution and its amendment. It argues that "The language of the Indian Reorganization Act is silent as to the qualifications for voters in an election held to *amend* a tribal constitution, and does not abrogate the Cheyenne River Sioux Tribe's right to set such qualifications in its Constitution." (Emphasis added). The distinction asserted is not persuasive. The provision of the Indian Reorganization Act referring to the amendment of a constitution plainly states that it may be "ratified and approved by the Secretary in the same manner as the original constitution and bylaws." The "same manner," in this context, refers to "a majority vote of the adult members [now 18 years of age] of the tribe * * * at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe." We find nothing in the Act, nor in its legislative history, justifying a reading of the statute that would apply one eligible age to the adoption of the constitution and another to the amendment of the same article. Both actions are of equal dignity and importance.

*Cheyenne River Sioux, supra,* 566 F.2d at 1089.

While this language does suggest a construction of section 476 under which elections on the adoption of constitutions and the adoption of amendments or bylaws would be treated in the same manner, it does not negate that portion of the statute which permits the Secretary to promulgate regulations regarding the calling of such elections. An administrative agency's regulation must be sustained if it is found to be reasonable and consistent with the statute under which it is promulgated. *King v. United States,* 545 F.2d 700, 706 (10th Cir. 1976). The language employed by the court in *Cheyenne River Sioux* does not, by itself, render the regulation unreasonable. Nor does the agency's interpretation of the regulation appear vulnerable to attack. An agency's interpretation of its own regulation is generally accorded great deference

by a reviewing court. *Oglala Sioux Tribe v. Andrus,* 603 F.2d 707, 718 (8th Cir. 1979). However, this principle is not absolute. In order for an agency interpretation to be granted such deference, it must be consistent with the congressional purpose. *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). In *Oglala Sioux* the Eighth Circuit held that it need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the statute under which the regulations were promulgated, is *plainly* inconsistent with the wording of the regulation or otherwise deprives affected parties of fair notice of the agency's intentions. *Cheyenne River Sioux, supra,* 566 F.2d at 718 (emphasis supplied). Any action taken without statutory authorization or which frustrates the underlying congressional policy of that statute is invalid. *Id.* at 707. Nothing in the facts alleged in this petition demonstrates an inconsistency of the degree required by the court's holding in *Cheyenne River.*

*Alternative Remedies*

Owing to the unique status historically enjoyed by Indian tribes, they are exempt from suit absent any specific congressional authorization of such suit. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 57, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978). Beginning with *Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896) in which the Supreme Court held the fifth amendment inapplicable to the powers of local self-government enjoyed by Indian tribes, federal courts have progressively exempted tribes from the requirements of other constitutional provisions, including some of the guarantees incorporated in the Bill of Rights. *Santa Clara Pueblo, supra,* 436 U.S. at 56, 98 S.Ct. at 1675. To counteract this trend Congress enacted the Indian Civil Rights Act of 1968. The ICRA imposed certain restrictions upon tribal governments similar to the guarantees incorporated in the Bill of Rights. However, the only express remedy included in the Act is the writ of habeas corpus. *See* 25 U.S.C. § 1303.

Subsequent to the enactment of the ICRA federal courts found it necessary to imply remedies in order to grant relief under the Act. *See, e.g., Rosebud Sioux Tribe v. Driving Hawk*, 534 F.2d 98 (8th Cir. 1976); *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976). However, in *Santa Clara Pueblo, supra*, 436 U.S. at 56, 98 S.Ct. at 1675, the Supreme Court held that there could be no implied remedies under the Act for wrongs committed by tribal officials. In so doing, the court reasoned that Congress's failure to include specific remedies other than the writ of habeas corpus was deliberate, stating:

> By not exposing tribal officials to the full array of federal remedies available to redress actions of federal and state officials, Congress may also have considered that resolution of statutory issues under § 1302, and particularly those issues likely to arise in a civil context, will frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts. Our relations with the Indian tribes have "always been * * * anomalous * * * and of a complex character." * * * Although we early rejected the notion that Indian tribes are "foreign states" for jurisdictional purposes under Art. III, *Cherokee Nation v. Georgia*, 5 Pet. [30 U.S.] 1 [8 L.Ed. 25] (1831), we have also recognized that the tribes remain quasi-sovereign nations which, by government structure, culture, and source of sovereignty are in many ways foreign to the constitutional institutions of the Federal and State governments. * * * As is suggested by the District Court's opinion in this case, * * * efforts by the federal judiciary to apply the statutory prohibitions of § 1302 in civil context may substantially interfere with a tribe's ability to maintain itself as a culturally and politically distinct entity.

As we have repeatedly emphasized, Congress' authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members correspondingly restrained. * * * Congress retains authority expressly to authorize civil actions for injunctive or other relief to redress violations of § 1302, in the event that the tribes themselves prove deficient in applying and enforcing its substantive provisions. But unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers. *Id.* at 70–71, 98 S.Ct. at 1683. The Court's language in *Santa Clara* precludes a writ of mandamus or any other action by this court to alleviate the situation of which Garreaux complains.

The appellee notes in his brief at page 9 n.4 that Garreaux is not without alternative remedies in that the tribal constitution provides a procedure for passing a resolution by referendum which would be binding on the tribal council. The appellee also states that tribal council members may be voted out of office at regular or special elections. It is impossible to assess, based on the records here, the efficacy of such remedies. However, it does appear that this may well be Garreaux's only available remedy.[2]

---

2. The court recognizes that the plaintiffs are being treated unfairly by the tribal council. If this treatment was being imposed on non-Indian citizens, a good argument could be made that the plaintiffs were being denied due process. If the tribal council continues to refuse to act upon the request by the Secretary it would seem logical that the Secretary should revise its regulation by deleting the requirement of a request by the tribal council when the tribal council fails or refuses to act within a specified period of time. If the Secretary refuses to revise its regulation the Congress could be asked to revise its statute 25 U.S.C. § 476.