Clarence RUNS AFTER, Edith Traversie, Dean Garreaux, Genevieve Swift Bird, Andrea Robideaux, Leslie Ducheneaux, Bertha Chasing Hawk, Gilbert LeBeau, Joan LeBeau, Walter Woods, and Grady Claymore, on behalf of themselves and all other similarly situated voters of the Cheyenne River Indian Reservation, Appellants,

v.

UNITED STATES of America, Bureau of Indian Affairs, Ken Smith, Jerry Jaeger, Donald Whitener, Eagle Hunter, Percy Marrowbone, Keith Jewett, Carl Makes Him First, Jerome White Horse, Germaine Means, Raymond Uses The Knife, and Robert Smith, individually and in their official capacities, Appellees.

Nos. 84–2123, 85–1029.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1984.

Decided June 27, 1985.

Terry Pechota, Rapid City, S.D., for appellants.

W. Richard West, Jr., Washington, D.C., for appellees.

Before McMILLIAN, ARNOLD and FAGG, Circuit Judges.

McMILLIAN, Circuit Judge.

These appeals involve the same underlying factual and legal dispute. At issue is the validity of two tribal resolutions. Appeal No. 84–2123 is an appeal from the district court order denying appellants' mo- tion for preliminary injunctive relief. While the appeal from the denial of preliminary injunctive relief was pending, the district court [1] dismissed the underlying action and a second appeal, No. 85–1029, was filed. We have consolidated the cases for purposes of appeal. For the reasons discussed below, we affirm the district court order dismissing the action and accordingly dismiss as moot the appeal from the denial of preliminary injunctive relief.

The dispute underlying these appeals historically dates from 1972 when the Cheyenne River Sioux Reservation was reapportioned from fifteen into six election districts for purposes of the election of Tribal Council representatives. *See Brown v. United States (Cheyenne River Sioux Tribal Council)*, 486 F.2d 658 (8th Cir. 1973). In June 1981 a resolution was presented to the Tribal Council to reapportion the reservation into thirteen election districts. That resolution was not adopted by the Tribal Council. Later a petition to reapportion the reservation into thirteen election districts was circulated and signed by the required number of eligible voters. A majority of the voters approved reapportionment in a referendum election held in December 1981. However, the Tribal Council refused to acknowledge or implement the results of the referendum election. In May 1982 an action was filed in tribal court to enforce the reapportionment of the reservation. In June 1982 the tribal court upheld the reapportionment and ordered all future tribal elections to be held in thirteen reapportioned election districts.

The next day, however, the Tribal Council terminated the tribal court judge, allegedly because of the decision enforcing the reapportionment, rescinded the tribal court order directing elections to be held in thirteen election districts, and appointed a new tribal court judge. In July 1982 the new tribal court judge held that the resolution was invalid because the referendum election was invalid. In August 1982 a Tribal Council primary election was held using six election districts. Also in August 1982 one

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

of the appellants, then Tribal Council member Joan LeBeau, wrote to the Bureau of Indian Affairs (BIA) to request a BIA investigation of the legality of the August 1982 primary election because it had not been conducted in thirteen reapportioned election districts. It appears that no action was taken by the BIA and in September 1982 the general election was held using six election districts.

In February 1983 a complaint was filed in federal district court by three named individuals, including appellant Joan LeBeau, and an organization of Cheyenne River Sioux tribal members called the "Committee to Save Our Constitution." Named as defendants in that action were the United States, the Department of the Interior, the BIA, and several individual government officials. The complaint alleged that the defendants erred in recognizing the Tribal Council elected in 1982 because the election had been improperly conducted in six election districts and also sought judicial review of the BIA's final decision to refuse to intervene in the 1982 tribal election dispute. In April 1983 the BIA recognized the Tribal Council elected in the 1982 election. The district court granted summary judgment in favor of the defendants, holding as a matter of law that the BIA's final decision recognizing the Tribal Council elected in 1982 from six election districts was correct because it followed the July 1982 decision of the tribal court. *Committee to Save Our Constitution v. United States,* No. CIV–83–3011, slip op. at 4 (D.S.D. Feb. 27, 1984). The district court judgment was not appealed.

In 1984 several of the named appellants in the present appeals were dissatisfied with the manner in which the Tribal Council had been conducting tribal affairs and decided to seek election to the Tribal Council. Five of the named appellants, Joan LeBeau, Gib LeBeau, Bertha Chasing Hawk, Grady Claymore, and Walter Woods, filed nominating petitions and were certified as eligible candidates by their respective district council election boards. These five appellants ran in the June 1984 primary election; four (Joan LeBeau, Gib LeBeau, Bertha Chasing Hawk, and Grady Claymore) received sufficient votes to run in the September 1984 general election and were so notified by the Tribal Election Board. Appellant Walter Woods barely lost in the primary election.

However, on July 12, 1984, the Tribal Council passed the two resolutions at issue in these appeals. In Resolution No. 190–84–CR the Tribal Council "forever barred" appellants Gib LeBeau, Joan LeBeau and Walter Woods from holding appointed or elected tribal office because of alleged "past misconduct in office." A second resolution, passed without identifying numbers, disqualified appellants Bertha Chasing Hawk and Grady Claymore from running in the September 1984 general election because of alleged non-residency in the district each sought to represent. As a result of these resolutions, four appellants were precluded from running in the September 1984 general election, and appellant Walter Woods, who would have been eligible to run in the general election following their disqualifications, was also precluded from running in the September 1984 general election.

In late August 1984 appellants Clarence Runs After, Edith Traversie, Dean Garreaux, Genevieve Swift Bird, Andrea Robideaux, Leslie Ducheneaux, Bertha Chasing Hawk, Gilbert LeBeau, Joan LeBeau, Walter Woods, and Grady Claymore, on behalf of themselves and other similarly situated Cheyenne River Sioux Reservation voters, filed this action in federal district court challenging the validity of the July 12 Tribal Council resolutions and seeking declaratory and preliminary injunctive relief, damages, and attorney's fees. Appellants sought to enjoin the general election scheduled to be held on September 4, 1984; if the general election proceeded, to enjoin BIA recognition of and BIA distribution of federal and tribal funds to the 1984 Tribal Council; and to compel the holding of a valid general election in which the names of appellants Gib LeBeau, Joan LeBeau, Bertha Chasing Hawk, and Grady Claymore would be included on the ballot. The

complaint named as defendants the eight Tribal Council members who had voted in favor of the July 12 Tribal Council resolutions, the United States, the Assistant Secretary of the Department of the Interior for Indian Affairs (Ken Smith), the Area Director of the Aberdeen Area Office of the BIA (Jerry Jaeger), and the Superintendent of the Cheyenne River Sioux Agency (Don Whitener).

The complaint alleged federal question jurisdiction under 28 U.S.C. §§ 1331, 1343, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (APA), and the 1871 Civil Rights Act, 42 U.S.C. §§ 1985, 1986. Appellants alleged that the tribal defendants violated 42 U.S.C. § 1985 and that the federal defendants knew the Tribal Council resolutions were invalid and had the authority to take appropriate action but failed to do so in violation of 42 U.S.C. § 1986. In particular, appellants alleged that the tribal defendants conspired to bar some of the appellants from holding tribal office in violation of 42 U.S.C. § 1985(1), that the tribal defendants conspired to bar some of the appellants from holding tribal office in retaliation for their earlier involvement in the *Committee to Save Our Constitution* action in violation of 42 U.S.C. § 1985(2), that the tribal defendants conspired to deny appellants the right to run for tribal office and to vote for qualified candidates in violation of the right to equal protection in violation of 42 U.S.C. § 1985(3), and that the federal defendants failed to take any action to prevent the tribal defendants from violating appellants' rights in violation of 42 U.S.C. § 1986.

The district court denied the motion for preliminary injunctive relief. *Runs After v. United States*, No. CIV–84–3065 (D.S.D. Aug. 29, 1984). The district court characterized appellants' complaint against the tribal defendants as an intratribal election dispute within the exclusive jurisdiction of the tribal court. Slip op. at 2, *citing Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir.1983). The district court also found that because appellants had not taken any administrative appeals, there was no subject matter jurisdiction with respect to the

federal defendants to review final agency action pursuant to the APA and 28 U.S.C. § 1331. Slip op. at 3, *citing Goodface v. Grassrope*, 708 F.2d at 338. Alternatively, the district court held that even if there was subject matter jurisdiction, the existence of federal jurisdiction was sufficiently doubtful and the timing of the motion for preliminary injunctive relief was so close to the date of the general election that it would deny preliminary injunctive relief. Slip op. at 4; *see, e.g., Krasnoff v. Hardy*, 436 F.Supp. 304, 310 (E.D.La.1977) (motion for preliminary injunctive relief filed too close to election); *Sid Berk, Inc. v. Uniroyal, Inc.*, 425 F.Supp. 22, 29 (C.D.Cal. 1977) (doubtful jurisdiction).

The district court order denying preliminary injunctive relief was then appealed to this court (No. 84–2123). Appellants' motion for stay pending appeal was denied. While the appeal was pending, the district court dismissed the underlying action without prejudice. *Runs After v. United States*, No. CIV–84–3065 (D.S.D. Dec. 7, 1984) (order of dismissal). A second appeal was then filed (No. 85–1029). The two appeals were consolidated for purposes of appeal.

As a preliminary matter, it should be noted that for purposes of appeal we will assume that the Tribal Council resolutions in question are invalid. This is evidently the position of the BIA. In a letter dated August 21, 1984, addressed to the BIA Area Director and attached as an appendix to Brief for Appellants in appeal No. 85–1029, the BIA Field Solicitor stated that the Tribal Council had acted contrary to the tribal constitution in passing the July 12 resolution barring three appellants from holding tribal office and another earlier resolution about candidate qualifications (Resolution No. 167–84–CR). In another letter dated September 25, 1984, addressed to the Chairperson of the Tribal Council and attached as an appendix to Brief for Appellants in appeal No. 85–1029, the Acting BIA Area Director stated that the July 12 resolution barring three appellants from holding tribal office was "wholly outside

the [Tribal] Constitution" and advised the Tribal Council that the BIA would not recognize Tribal Council actions in which members from Districts 5 and 6, the two districts affected by the July 12 resolution, participated.

In another letter dated October 25, 1984, addressed to the Chairperson of the Tribal Council and attached as an appendix to Brief for Appellants in appeal No. 85–1029, the Acting BIA Area Director modified the BIA's position with respect to Tribal Council actions in which members from District 5 and 6 participated. The BIA would continue to refuse to recognize the members of the Tribal Council elected from Districts 5 and 6, but the BIA would recognize actions taken by the Tribal Council when there were sufficient members present, excluding members from Districts 5 and 6, to constitute a quorum as specified in the tribal constitution.

In another letter dated November 9, 1984, addressed to the Chairperson of the Tribal Council and attached as an appendix to Brief for Appellants in appeal No. 85–1029, the BIA Area Director stated in response to stipulations presented by the Tribal Council that if the Tribal Council rescinded the July 12 resolution and held new elections, the BIA would recognize all Tribal Council actions until the elections were held; if the Tribal Council rescinded the July 12 resolution and held new elections but appellants did not agree to drop their suit (referring to the present action), the BIA would recognize all Tribal Council actions until this court rendered a decision; and if the Tribal Council did not rescind the July 12 resolution, the BIA's position as set forth in the October 25, 1984, letter would remain in effect.

Finally, we note that it appears that in late 1984 or early 1985 appellants filed an administrative appeal with the Department of the Interior seeking review of the BIA's refusal to require new elections in Districts 5 and 6. Appendices attached to Brief for Appellants in appeal No. 85–1029. We do not know the current status of this administrative appeal.

As a threshold matter we must resolve the problem of subject matter jurisdiction. The district court denied the motion for preliminary injunctive relief for lack of jurisdiction. Appellants argue that the district court has subject matter jurisdiction of their complaint under 28 U.S.C. § 1343 for the 42 U.S.C. § 1985 claims against the tribal defendants and the 42 U.S.C. § 1986 claim against the federal defendants and under 28 U.S.C. § 1331, pursuant to the APA, against the federal defendants for judicial review of the BIA action.

■ We agree with appellants that federal district courts do have subject matter jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, the BIA action. This question was resolved in appellants' favor in *Goodface v. Grassrope*, 708 F.2d at 338, a case involving a dispute over a tribal election held by the Lower Brule Sioux Tribe, in which the court held

the district court did have jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, the action taken by the BIA in refusing to recognize either tribal council. Although the APA may not be used as an independent grant of subject matter jurisdiction to review agency actions, the Supreme Court stated in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), that 28 U.S.C. § 1331 confers general jurisdiction on federal courts to review federal agency actions "subject only to preclusion-of-review statutes." We know of no statute precluding judicial review of BIA actions, and therefore we determine that the district court could review the agency action under the arbitrary or capricious standard enunciated in 5 U.S.C. § 706(2)(A).

■ It appears, however, that here appellants have not yet exhausted administrative remedies. As far as the court can determine from the record and from the materials attached as appendices to the parties' briefs, appellants have filed an administrative appeal with the Department of the Interior seeking review of the BIA's refusal to require new elections in Districts

5 and 6. That BIA action was taken in response to the Tribal Council resolution disqualifying Joan LeBeau and Gib LeBeau from running in the 1984 general tribal election. It is unclear from the record whether any BIA administrative action has been taken and, if so, whether any administrative appeal is pending with respect to the Tribal Council resolutions "forever barring" appellant Walter Woods from tribal office and disqualifying Bertha Chasing Hawk and Grady Claymore for non-residency.

As noted in *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979) (citations omitted), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980),

> [n]ormally, a litigant is not entitled to a judicial hearing on the merits of his [or her] claim until he [or she] has exhausted available administrative remedies. This is not a rule to be applied woodenly, however. Except in those cases where exhaustion of administrative remedies is specifically required by statute, administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.

We believe the district court acted within its discretion in requiring appellants to exhaust administrative remedies. The governmental interests in requiring exhaustion are particularly strong in the present case. It cannot be denied that the BIA has special expertise and extensive experience in dealing with Indian affairs. The interest of the BIA and its parent Department of Interior in administrative autonomy also supports requiring exhaustion of administrative remedies. Moreover, as more fully explained below, the somewhat anomalous and complex relationship between the quasi-sovereign Indian tribes and the federal government also supports, in general, requiring appellants to initially seek an administrative solution through the BIA and the Department of Interior.

For these reasons, we affirm the district court's dismissal of the claim against the federal defendants for judicial review of the BIA's decision to refuse to require new elections in Districts 5 and 6 because administrative remedies have not been exhausted. We address the dismissal of the 42 U.S.C. § 1986 claim against the federal defendants below.

Next, to the extent that appellants' complaint can be characterized as one seeking federal judicial review of the two Tribal Council resolutions at issue, a characterization with which appellants do not agree, the district court correctly dismissed the complaint for lack of jurisdiction. Appellants essentially argue that the Tribal Council resolutions banning appellants Joan LeBeau, Gib LeBeau and Walter Woods from holding tribal office "forever" and disqualifying Bertha Chasing Hawk and Grady Claymore from running for tribal office in the 1984 tribal general election were politically motivated because appellants opposed the manner in which the Tribal Council was conducting tribal affairs, particularly the handling of tribal funds. Appellants alleged that the tribal council resolutions were clearly inconsistent with the tribal constitution, bylaws and election ordinance. Such an action would necessarily require the district court to interpret the tribal constitution and tribal law.

■ We believe the district court correctly held that resolution of such disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court. *See Goodface v. Grassrope,* 708 F.2d at 338–39 & n. 4; *Shortbull v. Looking Elk,* 677 F.2d 645, 650 (8th Cir.), *cert. denied,* 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 168 (1982); *Garreaux v. Andrus,* 676 F.2d 1206, 1209–10 (8th Cir.1982) (per curiam). Appellants may seek review in tribal court or pursue alternative, political remedies.

As noted in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56–57, 98 S.Ct. 1670, 1675–1676, 56 L.Ed.2d 106 (1978) (citations and footnotes omitted),

[a]s separate sovereigns pre-existing the Constitution, [Indian] tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority. Thus, in *Talton v. Mayes,* 163 U.S. 376 [16 S.Ct. 986, 41 L.Ed. 196] (1896), this Court held that the Fifth Amendment did not "operat[e] upon" "the powers of local self-government enjoyed" by the tribes. *Id.* at 384 [16 S.Ct., at 989]. In ensuing years the lower federal courts have extended the holding of *Talton* to other provisions of the Bill of Rights, as well as to the Fourteenth Amendment.

As further explained in *Garreaux v. Andrus,* 676 F.2d at 1209–10,

> To counteract this trend Congress enacted the Indian Civil Rights Act of 1968 [, 25 U.S.C. § 1301 *et seq.*]. The ICRA imposed certain restrictions upon tribal governments similar to the guarantees incorporated in the Bill of Rights. However, the only express remedy included in the Act is the writ of habeas corpus. *See* 25 U.S.C. § 1303. Subsequent to the enactment of the ICRA federal courts found it necessary to imply remedies in order to grant relief under the Act.

However, in *Santa Clara Pueblo v. Martinez,* 436 U.S. at 72, 98 S.Ct. at 1684, the Supreme Court held that the ICRA does not impliedly authorize actions for declaratory or injunctive relief against either the tribes or tribal officers. The Court noted that "Congress considered and rejected proposals for federal review of alleged violations of the Act arising in a civil context." *Id.* at 67, 98 S.Ct. at 1681. The Court concluded that "[c]reation of a federal cause of action for enforcement of the rights created in Title I [of the ICRA], however useful it might be in securing compliance with [the ICRA], plainly would be at odds with the congressional goal of protecting tribal self-government," *id.* at 64, 98 S.Ct. at 1680, "would undermine the authority of tribal forums," *id.,* and "would also impose serious financial burdens on already 'financially disadvantaged' tribes." *Id.*

■ For these reasons, despite the substantive guarantees of certain constitutional rights contained in the ICRA, "the only federal relief available under the Indian Civil Rights Act is a writ of habeas corpus," *Goodface v. Grassrope,* 708 F.2d at 338 n. 4, and "[t]hus, actions seeking other sorts of relief for tribal deprivations of rights must be resolved through tribal forums." *Id. But cf. Santa Clara Pueblo v. Martinez,* 436 U.S. at 72–83, 98 S.Ct. at 1684–1689 (White, J., dissenting) (would find implied federal cause of action in ICRA; given congressional concern about deprivation of individual Indians' rights by tribal authorities, improbable that Congress desired enforcement of rights to be left to very tribal authorities alleged to have violated them).

We next turn to appellants' claims under 42 U.S.C. § 1985. The basis of federal jurisdiction for violations of 42 U.S.C. § 1985 is 28 U.S.C. § 1343. For the reasons discussed below, we hold appellants have failed to state a claim under 42 U.S.C. § 1985(1), (2) or (3), and affirm the district court's dismissal.

Appellants alleged that the tribal defendants, as members of the Tribal Council, by voting in favor of the two Tribal Council resolutions at issue, conspired to prevent by force, intimidation or threat their election to the Tribal Council, a position which appellants assert is an "office, trust or place of confidence under the United States," in violation of 42 U.S.C. § 1985(1). Appellants argue that Tribal Council members occupy a position of "confidence under the United States" because Indian affairs are intimately supervised by the United States and because of the fiduciary relationship that exists between the United States and the Indian tribes. Appellants also alleged that the tribal defendants, as members of the Tribal Council, by voting in favor of the two Tribal Council resolutions at issue, conspired to injure appellants by preventing their election to the Tribal Council in retaliation for appellants' participation in the earlier *Committee to Save*

*Our Constitution* lawsuit in federal court in violation of 42 U.S.C. § 1985(2). Appellants also alleged that the tribal defendants, all members of the Tribal Council, by voting in favor of the two Tribal Council resolutions at issue, conspired to deprive appellants of the "equal protection of the laws, or of equal privileges and immunities under the law," by barring or disqualifying appellants from tribal office on the basis of political opposition in violation of 42 U.S.C. § 1958(3). *See Means v. Wilson*, 522 F.2d 833, 839–40 (8th Cir.1975) (holding that 42 U.S.C. § 1985(3) protects the right to vote in tribal elections against interference from private conspiracies and that political dissidents constituted a class for purposes of 42 U.S.C. § 1985(3)), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976). *But cf. Spotted Eagle v. Blackfeet Tribe*, 301 F.Supp. 85, 88 (D.Mont.1969) (limited applicability of § 1985 in tribal context).

■ We need not consider whether the *Means v. Wilson* holding that 42 U.S.C. § 1985(3) prohibits political discrimination has been implicitly limited by *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3359–61, 77 L.Ed.2d 1049 (1983), in which the Supreme Court held that § 1985(3) did not reach "conspiracies motivated by economic or commerical animus" and found "difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means," because appellants have failed to adequately allege a conspiracy. The tribal defendants are all members of the Tribal Council, the governing body of the tribe, who acted, in passing the two Tribal Council resolutions at issue, in their official capacities as tribal council members. The Tribal Council as an entity or governmental body cannot conspire with itself. *Cf. Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66, 70–72 (2d Cir.) (corporate entity), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

■ Moreover, individual members of the Tribal Council, acting in their official capacity as tribal council members, cannot conspire when they act together with other tribal council members in taking official action on behalf of the Tribal Council. "[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his [or her] employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.) (action against law school and 38 individuals affiliated with the law school, including the dean and university trustees), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *see also Baker v. Stuart Broadcasting Co.*, 505 F.2d 181, 183 (8th Cir.1974) (corporation). *Means v. Wilson*, 522 F.2d at 840, is distinguishable because in that case "the only possible adequate allegation of a conspiracy under 42 U.S.C. § 1985(3)" involved the tribal council president who was alleged to have conspired with other private individuals. By comparison, in the present case the allegations of conspiracy involve only tribal council members.

■ In addition, we believe that the individual members of the Tribal Council would enjoy absolute legislative immunity from liability under 42 U.S.C. § 1985 for official actions taken when acting in a legislative capacity. *Cf. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404 n. 26, 405, 99 S.Ct. 1171, 1178, n. 26, 1179, 59 L.Ed.2d 401 (1981) (leaving open question of immunity for "individuals performing legislative functions at the purely local level" but granting immunity to members of regional agency created by interstate compact); *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (members of state legislature); *Aitchison v. Raffiani*, 708 F.2d 96, 98–99 (3d Cir.1983) (members of borough council); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir.1980) (members of municipal council); *see also Bruette v. Knope*, 554 F.Supp. 301, 304 (E.D.Wis. 1983) (common law immunity enjoyed by tribes extended to tribal officials acting in

355

official capacity). Here, the two Tribal Council resolutions at issue are essentially legislative acts.

Because appellants' claim against the federal defendants under 42 U.S.C. § 1986 are dependent upon their 42 U.S.C. § 1985 claims against the tribal defendants, which we have concluded failed to state a claim upon which relief could be granted, appellants' § 1986 claim must fail as well. *E.g., Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir.1980).

We affirm the district court's dismissal of appellants' complaint in appeal No. 85–1029. Appeal No. 84–2123 from the denial of preliminary injunctive relief is dismissed as moot. *See, e.g., Janousek v. Doyle*, 313 F.2d 916 (8th Cir.1963) (per curiam); *see also Ruby v. Pan American World Airways, Inc.*, 360 F.2d 691 (2d Cir.1966) (per curiam).