**SAC & FOX TRIBE OF THE MISSISSIPPI IN IOWA ELECTION BOARD, Plaintiff,**

v.

**BUREAU OF INDIAN AFFAIRS, Midwest Regional Director and Office of the Assistant Secretary–Indian Affairs, Aurene M. Martin, First Assistant and Principal Advisor, Defendants.**

**No. C04–1;RR.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

June 10, 2004.

Fred L. Dorr, Wasker, Dorr, Wimmer & Marcouiller, PC, West Des Moines, IA, Michael M. Mason, Portland, OR, for Plaintiff.

Robert M. Butler, US Attorney's Office, Cedar Rapids, IA, for Defendants.

## ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

READE, District Judge.

This matter is before the court on Defendants' Motion to Dismiss (docket no. 6) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I. FACTS

The Sac and Fox Tribe of the Mississippi in Iowa (the "Tribe") is a federally-recognized Indian Tribe with a Constitution dating from 1937. The Tribe's Meskwaki settlement is located in Tama County, Iowa. The governing body of the Tribe is the Sac and Fox Tribal Council (the "Tribal Council"). The Tribe's Constitution authorizes the Tribal Council to "conduct and supervise tribal elections and make and post necessary regulations for its procedure." Plaintiff Sac and Fox Tribe of the Mississippi in Iowa Election Board (the "Election Board") asserts it is the proper entity to conduct tribal elections under the Tribe's Constitution. The Election Board contends it acts on behalf of the elected Tribal Council in conducting and supervising tribal elections and in making and posting necessary regulations for its procedure.

On October 21, 2003, the Election Board supervised a tribal council election and a recall election at the Meskwaki Settlement School. One hundred eighty-one (181) tribal members cast their ballots at the school. This election resulted in three new members being elected to the Tribal Council: Johannes (Joe) Wanatee, Sr., Troy Wanatee, and Galen Wanatee. The vote to recall Tribal Council members Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., and Aaron Walker failed. The Election Board certified the results of the election. The Tribal Council elected on October 21, 2003 (the "Wanatee Tribal Council") was thereafter sworn into office and consisted of three newly-elected council members who joined four others already elected and serving.[1]

Also on October 21, 2003, a "dissident group," who had boycotted the Election Board's election procedure, held a separate election. This election was held at the Meskwaki Tribal Center. Four hundred two (402) tribal members cast their ballots at the center. This election resulted in three new members being elected to the Tribal Council: Wayne Pushetonequa, Harvey Davenport, Jr., and Homer Bear, Jr. The vote to recall Tribal Council members Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., and Aaron Walker passed. The October 21, 2003 election at the Meskwaki Tribal Center resulted in four vacancies on the Tribal Council.

By letter dated October 24, 2003, Larry Morrin, the Bureau of Indian Affairs Regional Director, acknowledged the results of the October 21, 2003 elections at both the Meskwaki Settlement School and the Meskwaki Tribal Center. In an attempt to reconcile the results of both elections, Regional Director Morrin combined the election results: "It is questionable that the elections completely followed the Constitution, however, the election[s] were so overwhelming in their reflection of the will of the membership of the Tribe, that minor procedural irregularities would not have affected the outcome. As stated earlier, to recognize the results of one election and

---

1. The Wanatee Tribal Council thus consisted of Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., Aaron Walker, Johannes (Joe) Wanatee, Sr., Troy Wanatee, and Galen Wanatee.

not the other would disenfranchise the vote of 69% of the voting electorate." (Ex. D at 5). Regional Director Morrin also called for the appointment of a new election board. Regional Director Morrin called upon such appointed election board to conduct a special election: "[W]e are requesting the Nomination Caucus and the Special Election to fill the vacancies resulting from the October 21 Recall Election, be handled by the representative group." (Ex. D at 5). On November 4, 2003, the appointed election board held a special election at the Meskwaki Tribal Center. This election resulted in four new members being elected to the Tribal Council: Keith Davenport, Deron Ward, Frank Black Cloud, and Ray Young Bear.

On November 7, 2003, in a letter addressed to "Tribal Council Members," Regional Director Morrin acknowledged receipt of the results of the November 4, 2003 recall election and special election held by the "dissident group." Regional Director Morrin stated that the federal government would recognize the Tribal Council of the "dissident group," which consisted of: Keith Davenport, Deron Ward, Frank Black Cloud, Ray Young Bear, Wayne Pushetonequa, Harvey Davenport, Jr., and Homer Bear, Jr.

On October 28, 2003, the Election Board appealed Regional Director Morrin's October 24, 2003 decision to create a new election board and Regional Director Morrin's November 7, 2003 recognition of the Tribal Council of the "dissident group." The Election Board also applied to stay further action by Regional Director Morrin. In a memorandum dated November 12, 2003, Aurene Martin, Principal Deputy Assistant Secretary—Indian Affairs, advised the Honorable Katherine Lynn, Chief Judge of the Interior Board of Indian Appeals, that she was assuming jurisdiction over the appeal. Principal Deputy Martin further noted that she had a copy of the October

28, 2003 Notice of Appeal filed by the Election Board and an October 30, 2003 Pre–Docketing Notice which had been previously filed in the case. Principal Deputy Martin advised that she would "follow this notice by sending the parties a notice of the procedures to be followed and a briefing schedule, which will include dates of filings and directives on ex parte communications." (Ex. G).

By memorandum dated December 11, 2003, the Acting Director for the Midwest Regional Office of the Bureau of Indian Affairs advised Principal Deputy Martin that a stay pending the Election Board's appeal should not be granted because a stay would: (1) be detrimental to the membership and self-government of the Tribe; (2) negatively impact economic development by resulting in continued closure of the Tribe's casino; (3) risk loss of the Tribal State Gaming Compact; and (4) hinder the Tribe's ability to fund its government. A copy of this memorandum was not shared with the Election Board. On December 18, 2003, Principal Deputy Martin issued her decision affirming the Regional Director's decision to recognize the "dissident group" as the Tribal Council. Principal Deputy Martin did not receive any briefing, argument, or other input from the Election Board.

## II. PROCEDURAL BACKGROUND

The Election Board filed this action on January 2, 2004. In its Complaint, the Election Board objects to the Bureau of Indian Affairs' (the "BIA") recognition of the Tribal Council of the "dissident group" on the grounds that the "dissident group" claims legitimacy through a non-constitutional process involving elections held outside the requirements of the Tribe's constitutional scheme and without being sworn into office as required by the same constitutional provisions. The Election Board

argues: (1) the Wanatee Tribal Council was duly elected and sworn into office during the October 2003 elections held pursuant to the Tribe's constitutional requirements; (2) it suffered an injury in fact as the performance of its duties as expected and required under the Tribe's Constitution has been rendered meaningless by improper agency action by the BIA; and (3) the wrongful action by the BIA has made it impossible for the Election Board to perform its duties required by the Tribal Constitution and as authorized and directed by the elected Tribal Council which appointed it.

In its Complaint, the Election Board asserts three counts. In Count I, the Election Board seeks judicial review of the BIA Regional Director's and the Principal Deputy's decision under the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"). In Count II, the Election Board asks the court for a declaratory judgment that the BIA unlawfully interfered with tribal elections. Count III seeks a mandamus requiring the BIA to recognize, for government-to-government purposes, the Wanatee Tribal Council.

On March 8, 2004, Defendants filed a motion to dismiss the Election Board's Complaint. Defendants urge the court to dismiss the Election Board's entire Complaint under Federal Rule of Civil Procedure 12(b)(1) because the Election Board has failed to establish standing. With respect to Counts II and III of the Complaint, Defendants argue dismissal is appropriate under Rule 12(b)(1) because these counts require the court to interpret the Tribe's Constitution and sovereign immunity has not been waived. Finally, with respect to Count III, Defendants seek dis-

missal under Rule 12(b)(6) because the Election Board failed to allege a clear nondiscretionary duty owed to it by the BIA.[2]

### III. STANDARD OF REVIEW

 Defendants challenge this court's jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. Fed.R.Civ.P. 12(b)(1). Federal courts have a duty in every case to inquire whether the prerequisite of subject matter jurisdiction has been satisfied. *Bradley v. American Postal Workers Union, AFL-CIO*, 962 F.2d 800, 802 n. 3 (8th Cir.1992). As subject matter jurisdiction is a threshold consideration, the court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990)).

 In order to dismiss for want of subject matter jurisdiction under Rule 12(b)(1), the moving party must successfully challenge the complaint either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). In a *facial* attack to jurisdiction, all of the factual allegations regarding jurisdiction are presumed true and the motion to dismiss succeeds only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* However, in a *factual* attack to jurisdiction, the court can consider competent evidence such as affidavits, deposition testi-

---

**2.** Dismissal under Rule 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46,

78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Given the fact that the court's resolution of Count III under Rule 12(b)(1) is dispositive, the court need not address Defendants' argument under Rule 12(b)(6).

mony, and the like in order to determine the factual dispute. *Id.* A Rule 12(b)(1) motion to dismiss is a factual attack when the truth of the jurisdictional facts alleged by the plaintiff are challenged. *See* 2A Moore's Federal Practice, ¶ 12.07. In this case, Defendants appear to challenge the jurisdictional facts alleged by the Election Board, that is, Defendants question whether the Election Board is the proper party to assert the claims contained in the Complaint and whether resolution of the action requires interpretation of the Tribal Constitution. Accordingly, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn,* 918 F.2d at 729. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. *Id.* The plaintiff has the burden of proving that jurisdiction does in fact exist. *Id.* at 730. The court may therefore consider materials outside the pleadings to the extent those materials are necessary to determine whether it has subject matter jurisdiction over the claims asserted by the Election Board.

## IV. ANALYSIS

### A. Whether the Election Board Has Established Standing

Defendants argue this case should be dismissed because the Election Board has failed to establish its standing. Stated differently, Defendants assert the Election Board's Complaint relies on an implicit tribal injury and the Election Board is attempting to assert the legal rights of a third party, namely, one faction of the Tribe involved in a longstanding internal tribal dispute. In response, the Election Board contends that it was directly harmed by the BIA's action and the Elec-

tion Board's injury-in-fact involved a direct undermining of its authority.

Article III of the United States Constitution allows for federal courts to "adjudicate only actual, ongoing cases or controversies." *Nat'l Right to Life Political Action Comm. v. Connor,* 323 F.3d 684, 689 (8th Cir.2003) (citing *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). To satisfy the Article III standing requirements, a plaintiff must demonstrate:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. An injury in fact "requires more than an injury to a cognizable interest. Standing requires that the party seeking review be [itself] among the injured." *Goos v. I.C.C.,* 911 F.2d 1283, 1290 (8th Cir.1990) (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). Standing is a jurisdictional requirement that can be raised at any time. *Delorme v. United States,* 354 F.3d 810, 815 (8th Cir. 2004).

Defendants dispute whether the Election Board can establish the first element required for standing, that is, Defendants dispute whether the Election Board

has suffered an injury-in-fact. The court finds that the Election Board has satisfied the injury-in-fact requirement for Article III standing. In the Complaint, the Election Board contends the performance of its duties as expected has been rendered meaningless by improper federal agency action. The court thus holds that the Complaint sets forth an injury-in-fact insofar as it alleges that the BIA unlawfully usurped the Election Board's authority.

■■■ The court further finds that the Election Board's allegations satisfy the causation prong of Article III standing. The Election Board alleges the BIA's wrongful interference harmed the Election Board. For example, the Election Board contends that the Regional Director of the BIA engaged in improper ex parte communication and the Principal Deputy violated due process by entering her decision after the Election Board filed its Notice of Appeal and without further input from the Election Board. The court also finds that the Election Board's allegations satisfy the redressability element of Article III standing because it is likely that the Election Board's alleged injury will be redressed by a favorable decision in this action. The court thus concludes that the Election Board has standing to assert its own interest.

### B. Whether the Court May Exercise Jurisdiction in this Case

The court shall next determine whether it has jurisdiction over this action. Defendants argue the court lacks subject matter jurisdiction over the Election Board's entire action because the Election Board is asking the court to get involved in a long-standing internal tribal dispute, and sovereign immunity has not been waived. Defendants further argue that the Election Board's entire case, and in particular

Counts II and III for declaratory and mandamus relief, is founded upon the court's impermissive interpretation of the Tribe's Constitution.

■■■ The Election Board asserts that the court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), the Administrative Procedure Act, 5 U.S.C. § 702, et seq. (judicial review of agency action), 28 U.S.C. § 2201, et seq. (declaratory judgment), and 28 U.S.C. § 1361 (mandamus).[3] The Election Board cites the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., as a jurisdictional basis. However, the Declaratory Judgment Act is not a jurisdictional statute and does not confer any jurisdiction on the federal courts; it simply authorizes the grant of declaratory relief in proper cases with respect to which federal jurisdiction is otherwise established. See West Helena Sav. and Loan Assoc. v. Federal Home Loan Bank Bd., 553 F.2d 1175, 1177 n. 3 (8th Cir.1977). Likewise, 28 U.S.C. § 1361 does not provide an independent ground for jurisdiction. See State Highway Commission of Missouri v. Volpe, 479 F.2d 1099, 1105 n. 6 (8th Cir.1973).

■■■ 28 U.S.C. § 1331 provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A district court may exercise federal question jurisdiction if the court is satisfied that the claim is one " 'arising under' federal law." National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 850, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of the Mississippi in Iowa, 207 F.3d 488, 489 (8th Cir.2000). In Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts, 878 F.2d

---

**3.** Although the Election Board asserts the APA is an independent basis for jurisdiction, the court shall consider the APA in conjunction with 28 U.S.C. § 1331.

1096 (8th Cir.1989), the Eighth Circuit Court of Appeals observed that there is "no 'single, precise definition' " of whether a cause of action "arises under" federal law, but that " 'the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' " *Id.* at 1100 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

**1. Whether the court may exercise jurisdiction over Count I**

In Count I, the Election Board seeks judicial review of the BIA's action. "Although the APA may not be used as an independent grant of subject matter jurisdiction to review agency actions, the Supreme Court stated in *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that 28 U.S.C. § 1331 confers general jurisdiction on federal courts to review federal agency actions 'subject only to preclusion-of-review statutes.' " *Goodface v. Grassrope,* 708 F.2d 335 (8th Cir.1983). *See also Runs After v. United States,* 766 F.2d 347, 351 (8th Cir. 1985) (noting that federal courts have subject matter jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, action by the BIA). In this case, the court has jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, the action taken by the BIA. The court thus holds that it has subject matter jurisdiction over Count I, which seeks judicial review of the BIA action under the arbitrary or capricious standard enunciated in 5 U.S.C. § 706(2)(A).

**2. Whether the court may exercise jurisdiction over Counts II and III**

In Counts II and III of the Complaint, the Election Board asks the court to declare the BIA's conduct violated the Tribe's Constitution and, therefore, is in-

valid. The Election Board further asks the court to order the government to "recognize" a particular group. The court has already explained that the Declaratory Judgment Act and 28 U.S.C. § 1361 do not provide independent grounds for jurisdiction. The court shall determine whether jurisdiction is nonetheless proper.

Despite the Election Board's efforts to characterize this action as one based on federal question jurisdiction, the court finds that the relief requested in Counts II and III necessarily requires an interpretation of the Tribe's Constitution. The court is without jurisdiction to resolve intra-tribal disputes requiring interpretation of a tribal constitution. *See Smith v. Babbitt,* 100 F.3d 556, 559 (8th Cir.1996) (holding federal courts do not have jurisdiction over intra-tribal disputes); *Runs After,* 766 F.2d at 352 (affirming district court's holding that "resolution of . . . disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court"); *Goodface,* 708 F.2d at 339 (where tribe has a "functioning tribal court, which the parties recognize as a court of competent jurisdiction to resolve tribal election disputes . . . [it] is essential that the parties seek a tribal remedy . . . [because] substantial doubt exists that federal courts can intervene under any circumstances to determine the rights of the contestants in a tribal election dispute."). The court shall therefore dismiss the Election Board's claims contained in Counts II and III of the Complaint.

**V. CONCLUSION**

**IT IS ORDERED** that:

1. Defendant's Motion to Dismiss (docket no. 6) is DENIED in part and GRANTED in part;

2. Counts II and III of Plaintiff Sac & Fox Tribe of the Mississippi in Iowa

Election Board's Complaint are DISMISSED;

3. This matter shall proceed to trial on Count I;

4. The Bureau of Indian Affairs shall forward the administrative record to the court; and

5. The parties shall submit, within two weeks of the filing of this order, a proposed trial date and proposed deadlines.